Dora SUROWITZ, individually and on behalf of all other similarly situated shareholders of Hilton Hotels Corporation, Plaintiff-Appellant,

v.

HILTON HOTELS CORPORATION, a corporation, et al., Defendants-Appellees.

No. 14653.

United States Court of Appeals Seventh Circuit.

March 11, 1965.

Richard F. Watt, Alan J. Altheimer, Walter J. Rockler, David R. Kentoff, Lionel G. Gross, Howard L. Kastel, Cotton, Watt, Rockler & Jones, Altheimer, Gray, Naiburg, Strasburger & Lawton, Chicago, Ill., for plaintiff-appellant.

Samuel W. Block, Albert E. Jenner, Jr., Keith F. Bode, Raymond, Mayer, Jenner & Block, Chicago, Ill., for defendant-appellee, Henry Crown.

Don H. Reuben, A. Leslie Hodson, Lawrence Gunnels, Chicago, Ill., for defendants-appellees, Hilton Hotel Corp.

William J. Friedman, Stanley R. Zax, Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., for individual defendants-appellees other than Henry Crown.

Before CASTLE, Acting Chief Judge, SWYGERT, Circuit Judge, and MERCER, District Judge.

MERCER, District Judge.

Plaintiff, Dora Surowitz, prosecutes this appeal to review an order of the court

below dismissing her complaint in a stockholder's derivative suit.[1]

Plaintiff, the owner of 100 shares of the capital stock of defendant, Hilton Hotels Corporation, filed this suit on behalf of herself and all other shareholders similarly situated praying certain relief against the individual defendants as hereinafter delineated. The defendants named in the complaint are Hilton Hotel Corporation, Hilton Credit Corporation, and certain individuals who are officers and directors of Hilton Hotels.

The complaint charged that the individual defendants had defrauded Hilton Hotels of large sums of money in violation of their fiduciary obligations under state law and in violation of the Securities Act of 1933 and the Securities and Exchange Act of 1934. Such fraudulent acts are alleged to have been done through two transactions. In the first of those transactions it is alleged that the individual defendants, as the officers and directors of Hilton Hotels, caused that corporation to offer to purchase and to purchase 300,000 shares of its own common stock at inflated prices. It is further alleged that over 100,000 of such shares were sold to the corporation by various officers and directors of the corporation.[2] The second transaction alleged is that the individual defendants, as officers and directors of Hilton Hotels, had caused that corporation to offer to purchase and to purchase approximately 1,058,000 shares of Hilton Credit Stock, including over 631,000 shares held by various officers and directors of the Hotels corporation, also at inflated prices.[3] The complaint further charged that Hilton Hotels thus was caused to expend approximately $12,000,000 of which approximately $4,800,000 was paid to certain of the officers and directors who are named as defendants.

The theory of the complaint is that the two stock purchase transactions above described had no proper corporate purpose, but that the same were intended by the individual defendants to enable certain of their number, particularly the defendants, Conrad N. Hilton and Henry Crown, and members of the families of those defendants, to sell shares of their stock to the corporation at a higher price than they could have obtained on the market.[4] It further alleged that the individual defendants made or caused to be made numerous false and misleading statements, in that they failed to disclose relevant information to the shareholders of Hilton Hotels related to their own activities in the furtherance of the alleged scheme. It is further alleged that those acts were done at a time when the individual defendants knew, or had reason to know, that the business affairs of Hilton Hotels were in such condition that a substantial drop in the value of the shares of that corporation was imminent.

All letters of transmittal, notices and offers submitted to the shareholders in the two transactions are attached to the complaint as exhibits.

The complaint alleged that the individual defendants, in presenting the offers to purchase the stock above men-

1. Our reasons for this conclusory statement in spite of the fact that eight counts of the complaint are based upon the federal securities statutes are hereinafter analyzed.

2. Officers and directors who are alleged to have sold such stock and the respective numbers of shares allegedly sold by each are: Conrad N. Hilton, 85,847; Sam D. Young, 353; Vernon Herndon, 1,147; Herbert C. Blunck, 393; Charles L. Fletcher, 4,100; Robert A. Groves, 6,000; and Joseph A. Harper, 2,150.

3. Officers and directors of Hilton Hotels alleged to have sold such stock and the respective numbers of shares allegedly sold are: Conrad N. Hilton, 375,967; Conrad N. Hilton Foundation, 28,334; Barron Hilton, 126,392; Henry Crown, 70,631; Charles L. Fletcher, 24,100; Robert P. Williford, 14,150; Vernon Herndon, 4,408; and Robert J. Caverly, 464.

4. The complaint alleged that the individual defendants engaged in manipulative practices which resulted in artificially inflating the market prices of both Hilton Hotels and Hilton Credit shares immediately preceding their issuance of the corporation's offers to purchase such shares.

tioned, concealed from the Corporation and the shareholders thereof the true reasons for making the offers, and that, with respect to both the purchase of the Hilton Hotels shares and the Hilton Credit shares, the individual defendants failed to disclose to the Hotels Corporation and its shareholders that they, the individual defendants, had engaged in activities designed artificially to inflate prices of the subject shares for the purpose of their scheme and plan to profit at the expense of the Hotels Corporation.

The complaint was in eleven counts, the first six of which were based upon the transaction for the purchase of the Hilton Hotels shares. Of those six counts, two of the counts charged certain of the defendants with the violation of the general corporation laws of the State of Delaware, while the other four counts charged all of certain of the individual defendants with the violation of Section 10(b) of the Securities and Exchange Act of 1934,[5] Section 17(a) of the Securities Act of 1933,[6] Sections 9(a) (4) and 9(e) of the Securities and Exchange Act of 1934,[7] and Section 12(2) of the Securities Act of 1933.[8]

Of the five counts relating to the transaction for the purchase of shares of Hilton Credit, one count charged certain of the defendants with violation of the general corporation laws of the State of Delaware, while the other four counts charged some, or all, of the individual defendants with the violation of Section 10(b) of the 1934 Act, Section 17(a) of the 1933 Act, Sections 9(a) (4) and 9(e) of the 1934 Act, and Section 12(2) of the 1933 Act.

With respect to the Hotels Corporation stock purchase, the complaint prayed for a judgment against the individual defendants for the damages sustained by the corporation because of their allegedly illegal acts, and that they make restitution to the corporation for its losses. The five counts related to the purchase of Hilton Credit shares prayed for a judg-ment against the individual defendants for the damages sustained by Hilton Hotels because of that transaction, and that the individual defendants be required to account to the Hotels Corporation for all profits, gains and benefits realized by them as a result of their allegedly illegal acts and breach of their fiduciary duty.

The complaint was signed by certain of plaintiff's attorneys, and was verified by the affidavit of plaintiff. On that affidavit plaintiff swore that certain of the allegations of the complaint were true. She verified a majority of the allegations of the complaint upon information and belief.

On February 25, 1964, after the complaint was filed, but prior to the filing of any answer thereto, the defendants, pursuant to an order of the court below, took the deposition of plaintiff. At that deposition the defendants' attorneys inquired of the plaintiff as to the basis for swearing that certain of the allegations were true. She replied to those questions that she "did not know" and "did not know anything about it." She was then questioned relative to the factual basis of a number of the specific allegations made on information and belief. In each instance she answered, in effect, that she didn't understand it, and couldn't explain it, and that she did not know. Upon the stipulation of counsel, the general question was then asked as to whether plaintiff knew any facts at all upon which she based the allegations made on information and belief, to which she answered, "I don't know. I can't give you no facts because I don't understand it."

She identified her signature on a letter of protest mailed to the corporation over her name, but when shortly thereafter she was asked upon what basis she had alleged that she had made a protest to the corporation of the stock purchase offer, she replied, "I don't know" and "I don't know nothing about it." At one point in the deposition she replied, "I have no

---

5. 15 U.S.C. 78j.

6. 15 U.S.C. 77q.

7. 15 U.S.C. 78i.

8. 15 U.S.C. 77l.

information because my son-in-law, [Irving Brilliant] I left it to him, and he was the one that knew all about it."

In response to questions from her own attorney she stated that she had turned the transmittal letter and the offer to purchase Hilton Hotels stock, and other letters relative to that transaction, over to Mr. Brilliant, who had brought the protest letter to her and asked her to sign it and that she had signed it. She further stated that Mr. Brilliant had brought her the complaint and explained it to her whereupon she had signed it. She further stated at one point that Brilliant had said that "He would like to take action" and that, "He said he would take care of it * * *. I left it to him."

On the same day, following the taking of plaintiff's deposition, the defendants served notice on plaintiff that they would, on the following day, February 26, 1964, move to dismiss the complaint on the ground that it was a sham pleading and on the further ground that the plaintiff, Dora Surowitz, was not a proper plaintiff.[9] At the hearing on February 26, leave was given to the defendants to file plaintiff's deposition, and plaintiff was given fifteen days to file whatever documents she deemed appropriate in opposition to the motion to dismiss.

Within the fifteen days allowed, plaintiff filed the affidavits of Mr. Brilliant and of Walter J. Rockler, one of plaintiff's attorneys.

The affidavit of Brilliant stated that he had a legal education, but that he worked as a professional investment counselor; that, as of December, 1962, members of his immediate family owned more than 2350 shares of Hilton Hotels common stock; that he had purchased one hundred shares of Hilton Hotels stock for the plaintiff on August 1, 1957; that in December, 1962, plaintiff brought him the papers relating to the offer of Hilton Hotels to buy a part of its own stock,

whereupon he informed her that he was studying the matter; that he conferred with Mr. Rockler after which he and Rockler reached the conclusion that the transaction was questionable and should be objected to; that Mr. Rockler prepared a letter of protest which plaintiff signed after the nature of its contents was explained to her by Brilliant; that he conducted investigations and research into the transaction and communicated with Mr. Rockler with respect thereto; that Hilton Hotels stock declined in market price in 1963 and the corporation passed the 1963 dividend; that plaintiff asked him about that, whereupon he told her that Rockler was of the opinion that the officers and directors of the corporation had engaged in wrongful conduct and it might be wise to bring suit; that plaintiff then stated that she was willing to sue; that he received the complaint from Mr. Rockler, which he read and explained to plaintiff, and that he informed her that the charges contained in the complaint reflected the investigation made by himself and Rockler and that the same were soundly based; and that thereupon plaintiff signed and verified the complaint.

The affidavit of Mr. Rockler described in some detail the investigations undertaken by him and other attorneys working with him which led to his knowledge that the positive allegations of fact of the complaint were true, and that he had gained information upon which he believed that all other allegations of the complaint were true and well founded.

After argument upon defendants' motion to dismiss, and after reviewing plaintiff's deposition and the affidavits submitted to him, the trial judge entered an order on March 30, 1964, striking plaintiff's complaint.

In his memorandum order striking the complaint, the trial court found that the verification of plaintiff was false inasmuch as her deposition revealed that she

9. The latter ground, based upon the contention that plaintiff was not a shareholder contemporaneously with the transactions of which complaint is made, is obviously ill founded and was apparently abandoned by defendants in the court below.

had no knowledge of the facts which she had therein sworn to be true, and that she had lacked any information to support her verification on information and belief of the acts of misconduct and wrongdoing alleged in the complaint. The court therefore held that the verification of the complaint was a nullity and inconsistent with the verification requirements of Rule 23(b).[10] The court concluded that, in the absence of a motion for leave to substitute any other verification or to file an amended complaint, the suit must be dismissed. The court further held that the plaintiff's attorneys who had signed the complaint violated Rule 39 of the District Court for the Northern District of Illinois in that they had filed affidavits falsely stating that they knew of no agreement for the sharing of costs or the payment of plaintiff's expenses in this suit, as shown by a comparison of such affidavits with the statement contained in the Brilliant affidavit that certain members of his family had undertaken and would undertake to pay the major part of the costs and expenses of the plaintiff's suit.

This appeal is prosecuted to review that decision.

■ The last ground mentioned upon which the complaint was dismissed can be quickly disposed of. There is nothing in the Brilliant affidavit which indicates that Mr. Rockler or any other of plaintiff's attorneys were advised at the time when their Rule 39 affidavits were filed

that Brilliant and other members of his family had agreed to bear a large part of the burden of expense connection with this suit.[11] There is thus absent any evidence that any of the three affidavits by plaintiff's attorneys stating that each knew of no payment or promise of payment of expenses was a false statement by any of the three attorneys. So far as the order of dismissal rests upon the determination that the attorneys had violated Rule 39 of the court below, such a finding is wholly without evidentiary support and is clearly erroneous. To the extent that the decision rests upon that finding, the record before us does not sustain it.

The determinative issue of this appeal deals with the proper interpretation of the provision of Rule 23(b) which requires that a complaint in a derivative cause of action must be verified.[12]

Before approaching that issue, we will first consider plaintiff's argument that Rule 23(b) could not be applied to this complaint inasmuch as eight of its eleven counts are based upon the federal securities acts. Thus the plaintiff argues, as to those eight counts, that the complaint cannot properly be construed as derivative because federal law is the jurisdictional basis thereof.

■ We certainly agree with the plaintiff's thesis that the policy of the federal securities laws is to protect investors, including the uninformed, the ignorant, and the gullible. However, the

10. In pertinent part, Rule 23(b) provides:

"In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains * * * and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or

trustees * * * such action as he desires * * *." F.R.Civ.P. 23(b), 28 U.S.C.A.

11. The only relevant statement contained in the Brilliant affidavit is the following narrative of a conversation not in the presence of any of the attorneys:

"I told Mrs. Surowitz that there would be expenses involved in suing and that, since members of the family owned a substantial amount of Hilton stock it was reasonable to assume that the members of the family would be willing to pay a major part of the expenses."

12. Note 10, supra.

statement of that thesis begs the question which is here presented. We think it clear from an examination of the sections of the securities laws upon which the complaint is founded, in the light of the allegations of the complaint itself, that the counts of the complaint which are based upon federal law are wholly derivative.

■ Section 12 of the Securities Act of 1933, 15 U.S.C. 77*l* provides, in pertinent part, that any person who offers or sells a security in violation of certain provisions of the act "shall be liable to the person purchasing such security from him." [13] The cause of action created by that section accrues only to the purchaser of securities sold in violation thereof. Slavin v. Germantown Fire Ins. Co., 3 Cir., 174 F.2d 799; Cf., MacClain v. Bules, 8 Cir., 275 F.2d 431.

Section 9 of the Securities and Exchange Act of 1934, 15 U.S.C. 78i, provides that a person who purchases or sells a security, the price of which was affected by certain manipulative practices proscribed by that section may recover damages from any person who willfully participated in such manipulative practices.[14]

■ Thus Section 9 of the 1934 Act, like Section 12 of the 1933 Act, creates a cause of action which accrues only to a purchaser or seller of securities, the price of which is affected by the manipulative practices therein proscribed.

Hilton Hotels, not plaintiff, is alleged to be the purchaser of the securities involved in this suit. It affirmatively appears that plaintiff did not sell any of the securities involved. Plaintiff is, therefore, without any personal right of action under either of those sections. Her interest is secondary and derivative, and the right alleged is the right of the corporation.

Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78j, and Section 17(a) of the Securities Act of 1933, 15 U.S.C. 77q, each declare certain conduct to be unlawful without specifically authorizing actions for damages thereunder.[15] It has been held that civil lia-

---

13. "Any person who [offers or sells a security in violation of certain provisions of this title] shall be liable to the person purchasing such security from him, who may sue * * * to recover the consideration paid for such security with interest thereon * * * upon the tender of such security, * * *." 15 U.S.C. 77*l*.

14. Section 9 declares unlawful, among other acts, any act or practice done with a design to create an appearance of active trading of a security or to raise or depress the price of such security for the purpose of inducing the purchase or sale of such security by others. The section then provides, in part:

"(e) Any person who willfully participates in any act or transaction in violation [of this section], shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may sue * * * to recover the damages sustained as a result of any such act or transaction. * * *." 15 U.S.C. 78i.

15. Section 10 of the 1934 Act provides, in part:

"It shall be unlawful for any person, * * *, by the use of any means or instrumentality of interstate commerce or of the mails, * * *—

"(a) * * *

"(b) To use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. 78j.

Section 17 of the 1933 Act provides in pertinent part:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to

bility under each of those sections is implied by the language which makes the proscribed conduct unlawful. Pfeffer v. Cressaty, S.D.N.Y., 223 F.Supp. 756, and Osborne v. Mallory, S.D.N.Y., 86 F.Supp. 869; Cf., Texas Continental Life Ins. Co. v. Bankers Bond Co., W.D.Ky., 187 F. Supp. 14; Compare, Trussell v. United Underwriters, Ltd., D.Colo., 228 F.Supp. 757, all interpreting Section 17 of the 1933 Act; E. g., Ellis v. Carter, 9 Cir., 291 F.2d 270; Matheson v. Armbrust, 9 Cir., 284 F.2d 670, cert. denied 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860; Hooper v. Mountain States Securities Corp., 5 Cir., 282 F.2d 195, cert. denied 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693, and Fischman v. Raytheon Mfg. Co., 2 Cir., 188 F.2d 783, applying Section 10(b) of the 1934 Act.

Where it has appeared that a corporation was the party injured by a violation of Section 10(b) of the 1934 Act, the courts have held that a shareholder of that corporation had standing to sue only on a derivative basis. Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461, cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356; Slavin v. Germantown Fire Ins. Co., 3 Cir., 174 F.2d 799, 805–806; Kremer v. Selheimer, E.D.Pa., 215 F.Supp. 549, 552.

■■ Though we have found no authority treating this precise question under the provisions of Section 17(a) of the 1933 Act, the plain language of that Section convinces us that any cause of action arising under that Section is a right of the person injured by the acts and practices therein proscribed. When injury is alleged to have been incurred by a corporation, its shareholders can prosecute a suit only upon a derivative basis.

■ Assuming that each of the eight counts of this complaint based upon

the federal statutes states a cause of action, each cause is that of Hilton Hotels, not a cause personal to plaintiff. Her interest and her right to file a suit are clearly secondary and derivative.

Gottesman v. General Motors Corp., S.D.N.Y., 28 F.R.D. 325, is not in point, but is of interest upon this question. The complaint in that case was a shareholder's derivative suit based upon a claim of alleged violation of the federal anti-trust laws. There it was argued that the provision of Rule 23(b) which requires that a plaintiff have been a shareholder at the time of the injury of which he complained could not be applied because the cause of action involved a federal question. That argument was rejected, the court saying that Rule 23(b) must be applied to a derivative suit whether jurisdiction of the court be based upon a federal question or upon diversity of citizenship.

■ Plaintiff's historical argument, that Rule 23(b) was designed only to prevent the creation of federal jurisdiction by collusion, is not persuasive. That rule is also designed to prohibit speculation in litigation and to protect the integrity of the invaluable instrument of a derivative suit. Cf., Gottesman v. General Motors Corp., 28 F.R.D. 325, 326. Although such a suit does have secondary value to a shareholder plaintiff in the protection of the financial integrity of his investment in a corporation, the necessity for the contemporaneous protection of the corporation itself and of its officers and directors from ill-conceived, nuisance-value litigation is, at least, a consideration of equal value. Cf., Pioche Mines Consolidated, Inc. v. Dolman, 9 Cir., 333 F.2d 257, 265.

The cases cited by plaintiff, arising under Section 16(b) of the Securities and Exchange Act of 1934,[16] are wholly inap-

make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which

operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. 77q(a).

16. 15 U.S.C. 78p.

posite.[17] Those cases simply held that the contemporaneous ownership requirement of Rule 23(b) is not applicable to such litigation because of the express authorization contained in Section 16(b) for a suit by "the holder of any security."

Plaintiff's reliance upon Borak v. J. I. Case, 7 Cir., 317 F.2d 838, aff'd 377 U.S. 1426, 84 S.Ct. 1555, 12 L.Ed.2d 423, is likewise wholly misplaced. In that case we dealt only with the application of the Wisconsin security for expense statutes to a cause of action arising under the provisions of the Securities and Exchange Act.[18] No question under Rule 23(b) was presented.

We conclude that the principal issue presented upon this appeal is not affected by the fact that eight of the eleven counts rely upon federal law as a jurisdictional basis. Plaintiff's suit is derivative and is governed by the provisions of Rule 23(b).

The crucial issue presented by this appeal, namely, the interpretation of the verification requirement of Rule 23(b), is without guiding precedent. It is also an issue which opens the door to sophistries of argument, some of which tend more to cloud the issue than to elucidate it. In the portion of our opinion which follows, we have sought to avoid the invitation extended by the briefs to fish in the dark waters of speculation and have applied our best judgment to the decision of a close question of law.

We reject plaintiff's initial argument that the record before this court cannot support the finding that she was without relevant knowledge when she verified the complaint because the questions upon the deposition related to the plaintiff's knowledge on February 25, 1964, not to her knowledge approximately two and one-half months previously when she had verified the complaint.

We would agree that plaintiff's argument has verity insofar as the questions asked upon deposition related to technical, evidentiary facts bearing upon the allegations of the complaint. In most cases, the plaintiff in a shareholders derivative suit is merely the instrument for bringing the suit to the court. By hypothesis, most such plaintiffs would lack first-hand knowledge of alleged facts dealing with the intricacies of corporate finance. Most of them, also, would have to rely upon the opinions and advice of trained counsellors for many of the principal allegations of such a complaint.

Reading the deposition most favorably to plaintiff, there is no question that she stated as positive fact essentially four things. These are that she was an owner of Hilton Hotels stock, that the stock missed a dividend, that she thought that her stock was not right, and that she had consulted Mr. Brilliant relative to the meaning of the written offer submitted to her for the purchase of a number of Hilton Hotels shares. In the same light, no one can successfully refute plaintiff's positive statements that she did not know who the individual defendants were, that she did not know of any wrongful acts which they had done, that she did not know of any facts upon which she had alleged that the individual defendants had caused the purchase offers to be made, that she knew nothing about any protest which she had made to the corporation, except for the fact that she had signed a letter shown to her, and that she did not understand the factual basis of her complaint.

It appears from the record that plaintiff is an immigrant woman who works as a seamstress and who has a limited education. It also appears that she has

17. Dottenheim v. Murchison, 5 Cir., 227 F.2d 737, cert. denied 351 U.S. 919, 76 S.Ct. 712, 100 L.Ed. 1451; Blau v. Mission Corp., 2 Cir., 212 F.2d 77, cert. denied 347 U.S. 1016, 74 S.Ct. 872, 98 L. Ed. 1138; Pellegrino v. Nesbit, 9 Cir., 203 F.2d 463, 37 A.L.R.2d 1296; Benisch v. Cameron, S.D.N.Y., 81 F.Supp. 882.

18. That suit involved the provisions of 15 U.S.C. 78n(a) and 78aa.

a very limited capacity for reading the English language. From such apparent facts, it must then be concluded that plaintiff is among the most unsophisticated of investors.

We think a sensible interpretation of the verification requirements of Rule 23 (b), in the light of the realities of litigation of this nature, must relieve the plaintiff after two and one-half months from the necessity of recalling technical factual information which she received from trusted advisors and upon which she acted pursuant to their advice. On the other hand, we find it inconceivable that the instigator of a suit of this nature could fail to know the identity of the individual defendants as directors and officers of the corporation and to know in a general sense what wrongful acts she conceived to have been done which formed the whole supporting skeleton for the suit which she has filed. We think that the deposition of plaintiff evidences one crucial fact, namely, that she evidenced such complete lack of knowledge, understanding or information with relation to the suit which she had filed that the deposition demonstrates without cavil that she completely lacked any knowledge of the basis of the complaint at the time when she signed the same and swore to the verity thereof.

 We can only conclude, as did the court below, that plaintiff's verification of the complaint was false because she swore to the verity of alleged facts of which she was wholly ignorant.

It has been held in the context of the bankruptcy statutes that there was no verification of a petition because it appeared upon a trial of the case that the petitioners had no knowledge of any of the acts of bankruptcy which they had alleged in their petition under oath. In re Frank, E.D.Pa., 234 F. 665, aff'd 3 Cir., 239 F. 709. We think the same principle applies under the provision of Rule 23(b).

 Rule 23(b) is one of the few instances in which the federal rules require verification of pleadings. We think that that provision requires something more than the mere formality of recklessly swearing to the truth of matters not known. The derivative suit is a unique vehicle of litigation. The holder of one share of stock who is disgruntled at some act of a corporation can, by this device, embroil the corporation and its officers and directors in protracted litigation. We think the verification requirement is designed to compel a plaintiff to begin such a suit with sufficient knowledge of facts and information to show by his verification that there is a substantial basis to support the complaint which he makes.

 As we have indicated, we conceive that all but the most sophisticated investors must rely upon attorneys, or other advisors to supply a substantial part of the information upon which any such complaint rests. We think that the Rule would be satisfied by a verification of intricate factual and conclusory allegations in reliance upon such advice and information. But if the verification provision of the Rule is to have any real meaning, it requires that a plaintiff must have knowledge of his own position and relationship to the suit, of the official identity of the parties against whom the suit is brought and general knowledge of the wrongful acts which he alleges as a foundation for his complaint.[19]

---

19. Plaintiff argues that ample assurance against a frivolous suit is found in the requirement of Rule 11, F.R.C.P., 28 U.S.C.A., that an attorney certify by his signature to a complaint that it rests upon a sound basis. Adoption of that argument would emasculate Rule 23(b). We must assume that the drafters of Rule 23(b) intended something more than a mere semantic exercise in the drafting of its provisions. Had they intended the certification provision of Rule 11 to supersede the verification provision of Rule 23(b), we think that the latter provision would have been omitted. We think the intent was to impose a condition of added assurance in the narrow field to which Rule 23(b) applies.

There can be no question that that minimal requirement was not satisfied in this case. On the contrary, it affirmatively appears that plaintiff merely loaned her name to a suit which others desired to file, though she had no idea what the suit was all about. We must conclude that there was, in fact, no verification of this complaint.

That conclusion cannot be altered by the fact that many of the material allegations of the complaint are obviously true and cannot be refuted. Nor can it be altered by the fact that plaintiff is a person having little education and, quite apparently, wholly lacking in sophistication in financial matters. Those limitations can't apologize for her affirmative statements, for example, that she knew of no facts upon which she alleged that the individual defendants had caused the stock purchase offers to be made, and that she did not know why she had alleged that those defendants had committed any of the unlawful acts alleged. These things she must have known to give legitimacy to the serious charges made against those individuals.

Neither Murchison v. Kirby, S.D.N.Y., 27 F.R.D. 14, nor Freeman v. Kirby, S.D.N.Y., 27 F.R.D. 395, which are cited by plaintiff, has any conceivable bearing upon the issue before us. Both of those cases arose under Rule 11, F.R.C.P., 28 U.S.C.A., and neither involved any question of the interpretation of Rule 23 (b).[20]

No questions of fact were presented by the Brilliant and Rockler affidavits. Those affidavits reveal that substantial and diligent investigation by Brilliant, Rockler and others preceded the filing of this complaint. They would, in our opinion, completely refute the merit of any motion under Rule 11 directed against this complaint. Neither affidavit, however, does anything, if anything could be done, to offset plaintiff's positive disavowal of any relevant knowledge or information other than the fact of her stock ownership.

 Brilliant does state in his affidavit that he read the complaint to plaintiff before she signed it, but it seems obvious from her deposition that she had no conception of the matters read. If the contention was that this was a sham pleading in the sense that it was without arguable foundation, these affidavits would, in our opinion, have a controlling bearing upon the disposition of the defendant's motion. A pleading may, however, be sham in respects other than the lack of an arguable foundation to sustain it. We think the court below correctly held that a pleading governed by Rule 23(b) is sham when it clearly appears that the ostensible verification is a mere formality without knowledgeable or informative comprehension in the party plaintiff whose verification gives it the breath of life. That breath is not instilled by the reading of words to that

---

20. Because Murchison had stated, in answer to certain questions upon his 1800 page deposition, that he had no personal knowledge of certain of the facts alleged in his verified complaint, the defendants in a derivative suit moved to strike the complaint as a sham pleading because Murchison's attorneys had permitted him to verify facts of which he had no personal knowledge. It was not contended that Murchison lacked knowledge of the basic facts as to the official identity of the defendants and the theory of his cause of action. He stated upon his deposition that he had relied upon information supplied by his retained attorneys in verifying the truth of certain material allegations. The court denied the motion to strike, saying that it was not necessary for a plaintiff to have direct knowledge of all evidentiary details where it appears that his verification rests upon information supplied by attorneys expressly authorized to file the complaint. Murchison v. Kirby, S.D.N.Y., 27 F.R.D. 14, 18, 19, n. 10, n. 11. See also Hoover v. Allen, S.D.N.Y., 180 F.Supp. 263, 265.

plaintiff which she obviously did not understand.

The question whether the Rockler affidavit may serve as a verification for this complaint is not before us. There was no motion for a substituted verification in the court below and no submission of any amendment to the complaint. We express no opinion upon the question whether verification of a stockholder derivative complaint by attorney would satisfy the requirements of Rule 23(b).[21]

The court below had inherent power to dismiss this complaint because of plaintiff's non-compliance with the Rule. Rule 41(b), F.R.C.P., 28 U.S.C.A.; Johnson v. Brandon Corp., 4 Cir., 183 F.2d 444; Cf., Meeker v. Rizley, 10 Cir., 324 F.2d 269, 271.

We have considered all arguments advanced by the plaintiff. We have considered the record in the light of plaintiff's limited grasp of the English language and the intricacies of corporate finance. We have considered the peculiar position of a plaintiff in a suit such as this as, principally, the instrument through which the judicial machinery is set in motion. It is not unreasonable to state as a minimum requirement that the plaintiff have general knowledge of the acts of which she complains and the connection of the defendants to those acts which she alleges. We conclude that any lesser requirement would make the verification provision farcical.

Judgment affirmed.

* A complaint based largely upon an attorney's copying part of the Murchison complaint, and filed in the name of a plaintiff who agreed "to lend his name" to the suit was stricken as sham in Freeman v. Kirby, S.D.N.Y., 27 F.R.D. 395, 398. The court held that there was proof that the attorney was without any information upon which he could certify under Rule 11 that the complaint stated a good cause of action.

21. Where the foundation for a derivative complaint was based upon knowledge

gained by plaintiff's attorney through his participation in proceedings for the dissolution of a corporation under the New York corporation laws, one court held that verification of such complaint by attorney satisfied the verification requirements of Rule 23(b). Bosc v. 39 Broadway, Inc., S.D.N.Y., 80 F.Supp. 825. To some extent, the court relied upon a New York procedural rule which permitted pleadings to be verified by attorney if the client resided in a county other than that in which the attorney's office was located.