**BANGOR AND AROOSTOOK RAILROAD COMPANY and Bangor Investment Company, Plaintiffs,**

v.

**BANGOR PUNTA OPERATIONS, INC. and Bangor Punta Corporation, Defendants.**

**Civ. No. 1933.**

United States District Court,
D. Maine, N. D.

Dec. 29, 1972.

Roger A. Putnam, Portland, Me., Alan L. Lefkowitz and Edward T. Robinson, Ely, Bartlett, Brown & Proctor, Boston, Mass., for plaintiffs.

Sumner T. Bernstein and Herbert H. Sawyer, Portland, Me., James V. Ryan, New York City, for defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This action arises under the Securities Exchange Act of 1934, the Clayton Antitrust Act, the Maine Public Utilities Act, and the common law of Maine. Plaintiff Bangor and Aroostook Railroad Company (BAR) is a Maine corporation which operates a railroad in the northern part of the State of Maine. Plaintiff Bangor Investment Company (BIC), a Maine corporation, is a wholly-owned subsidiary of BAR. Defendant Bangor Punta Corporation (Bangor Punta), a Delaware corporation, is a diversified holding company with operating units in various industries. Defendant Bangor Punta Operations, Inc. (BPO), a New York corporation, is a wholly-owned subsidiary of Bangor Punta. On October 13, 1964, Bangor Punta, through its wholly-owned subsidiary BPO, became the owner of approximately 98.3% of the stock of BAR when BPO acquired all the assets of Bangor and Aroostook Corporation (BAC), a Maine holding company which BAR had caused to be formed in 1960. From October 13, 1964 until October 2, 1969, Bangor Punta owned through BPO approximately 98.3% of all the outstanding stock of BAR. On October 2, 1969, BPO sold all its stock interest in BAR to Amoskeag Company (Amoskeag), a Delaware investment company controlled by Frederic C. Dumaine, Jr., for a consideration of approximately $5,000,000. Subsequently, Amoskeag has purchased additional BAR shares, and now owns over 99% of all the outstanding capital stock of BAR.

The complaint contains thirteen counts and seeks damages totaling approximately $7,000,000 for misappropriation and waste of corporate assets alleged to have been caused to BAR by four intercompany transactions, which

allegedly took place between BAC or Bangor Punta and BAR during the period between 1960 and 1967, while BAC and then Bangor Punta were in control of BAR. Counts I and II are brought, respectively, under the common law of Maine (Count I) and Section 104 of the Maine Public Utilities Act (35 M.R.S.A. § 104) (Count II). They charge that BAC, and later BPO, improperly charged BAR for nominal legal, accounting, printing and other services furnished BAR by BAC and BPO. Counts III, IV, V and VI are brought, respectively, under the common law of Maine (Count III); Section 10 of the Clayton Antitrust Act (15 U.S.C. § 20) (Count IV); Section 104 of the Maine Public Utilities Act (Count V); and Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.10b–5) promulgated thereunder by the Securities and Exchange Commission (Count VI). They are based upon the charge that BAC improperly acquired St. Croix Paper Company stock owned by BAR through its wholly-owned subsidiary BIC. Counts VII, VIII, IX and X are brought, respectively, under the common law of Maine (Counts VII and IX); and Section 10(b) of the Securities Exchange Act and Rule 10b–5 thereunder (Counts VIII and X). They charge that BAC and BPO improperly caused BAR to declare special dividends to its stockholders, including BAC and BPO, and improperly caused BIC to borrow so as to satisfy certain balance sheet ratios required by an earlier loan agreement in order to pay a regular dividend. Counts XI, XII and XIII are brought, respectively, under the common law of Maine (Count XI); Section 10 of the Clayton Antitrust Act (Count XII); and Section 10(b) of the Securities Exchange Act and Rule 10b–5 thereunder (Count XIII). They allege that BAC improperly caused BAR to excuse payment by BAC and BPO of the interest due on a loan made by BAR to BAC. In substance, the complaint alleges that Bangor Punta and its predecessor in interest, BAC, while they were in control of BAR through ownership of 98.3% of its stock, "calculatedly drained the resources of BAR in violation of law for their own benefit" during the period between 1960 and 1967, prior to the time Amoskeag purchased Bangor Punta's interest in BAR.

■ Presently before the Court is defendants' motion for summary judgment dismissing the entire complaint, or in the alternative dismissing the two counts brought under the Maine Public Utilities Act (Counts II and V). Defendants seek dismissal of the entire complaint on the ground that Amoskeag, which would be the sole beneficiary of any recovery by the corporate plaintiffs, was not a stockholder of BAR at the time of the alleged improper transactions and itself has sustained no injury as a result thereof. The Court agrees. Since the Court therefore concludes that the entire complaint must be dismissed, it does not reach defendants' alternative motion for dismissal of Counts II and V.

It is true that, as plaintiffs assert, the present action is an action brought by the corporate plaintiffs in their own right, and does not purport to be a derivative action on behalf of either Amoskeag or the 1% minority stockholders in BAR. But, looking at the substance of the action, it is evident that the real party in interest is Amoskeag, the present owner of over 99% of the outstanding BAR shares. And having purchased the stock of BAR from Bangor Punta in 1969, long after the events complained of occurred, Amoskeag is clearly attempting, by having the corporations which it controls bring the action in their names, to recover the full $5,000,000 consideration paid to Bangor Punta for the BAR shares, plus $2,000,000 more, while still keeping the BAR shares. Amoskeag does not claim that it was deceived or defrauded by Bangor Punta when it purchased its BAR stock, or that it did not get full value for its purchase price. Nor do plaintiffs claim to bring this action on behalf of any creditors or in the public

interest. It would accordingly be contrary to settled equitable principles to permit Amoskeag, by thus using the corporate fiction, to acquire a windfall for any past misbehavior on the part of Bangor Punta during the period when Amoskeag had no interest in BAR and sustained no injury, direct or indirect, as a result of Bangor Punta's alleged improper acts.

Plaintiffs admit that the alleged wrongs took place before Amoskeag purchased its BAR stock from Bangor Punta. Under these circumstances, there can be little doubt that Amoskeag would be barred from maintaining a derivative suit on behalf of BAR for the wrongs alleged to have occurred before Amoskeag purchased its BAR shares. As to the claims asserted under the Securities Exchange Act and the Clayton Antitrust Act, Fed.R.Civ.P. 23.1 would apply and in terms requires contemporaneous ownership for maintenance of a stockholder derivative action. Surowitz v. Hilton Hotels Corp., 342 F. 2d 596, 604 (7th Cir. 1965); Gottesman v. General Motors Corp., 28 F.R.D. 325 (S.D.N.Y.1961). To the extent that plaintiffs' claims arise under state law, jurisdiction being based upon diversity of citizenship, there is doubt as to whether the federal rule or state law applies. See 3B Moore's Federal Practice (2d ed. 1969) ¶ 23.1.15[2]. The majority of states, however, also have adopted the contemporaneous ownership rule, either by judicial decision or by statute. Id. at note 6. And even in those cases where the rule has not been applied, it has been held that a subsequent shareholder cannot sue where, as in the present case, he acquired his stock from the alleged wrongdoer, who himself would have been barred by his participation and acquiescence.[1] See, e. g., Bloodworth v. Bloodworth, 225 Ga. 379, 387, 169 S.E.2d 150, 156–157 (1969); Babcock v. Farwell, 245 Ill. 14, 40–41, 91 N.E. 683, 692–693 (1910); Home Fire Insurance Co. v. Barber, 67 Neb. 644, 661–662, 93 N.W. 1024, 1030–1031 (1903); Bookman v. R. J. Reynolds Tobacco Co., 138 N.J.Eq. 312, 372, 48 A.2d 646, 680 (Ch.1946). Plaintiffs instituted the present suit two days prior to the effective date of the new Maine Business Corporation Act, which adopts the contemporaneous ownership rule, 13–A M.R.S.A. § 627(1)(A) (1972). It is an open question in Maine whether the contemporaneous ownership rule applied at the time the present suit was brought. See Field, McKusick & Wroth, Maine Civil Practice (2d ed. 1970) § 23.2 at 393.[2] But there is no indication in the Maine cases that the Maine court would not have followed the prevailing rule.

1. Plaintiffs allege no facts which would support the allegation in their complaint that "[t]he injury to BAR is a continuing one surviving the aforesaid sale [from BPO] to Amoskeag." There is thus no basis for any suggestion that they may rely upon the "continuing wrong" exception to the contemporaneous ownership rule, which permits a subsequent stockholder to maintain a derivative suit if the alleged wrongful acts and their effects continue and are injurious to him. Moreover, there is serious question as to whether such an exception should be recognized at all. Compare Duncan v. National Tea Co., 14 Ill.App.2d 280, 144 N.E.2d 771, 775 (1957) with Weinhaus v. Gale, 237 F.2d 197, 199–200 (7th Cir. 1956); Bowman v. Alaska Airlines, 14 Alaska 62, 14 F.R.D. 70, 72 (1952).

2. Defendants point to Hyams v. Old Dominion Co., 113 Me. 294, 93 A. 747 (1915) as indicating the new Maine Business Corporation Act merely codified pre-existing Maine law. In that case, the defendant objected that the plaintiff could not complain because the wrong, if any, was done before he became a stockholder. The court said: "One answer to this, and a sufficient one, is that the wrong is a continuing one." 113 Me. at 302, 93 A. at 750. See also Jeffs v. Utah Power and Light Co., 136 Me. 454, 465, 12 A.2d 592 (1940). Although it can be argued that by applying the continuing wrong exception to the contemporaneous ownership rule, see note 1, supra, the Maine court impliedly acknowledged that Maine law required contemporaneous ownership in shareholder actions, the court's cryptic statement is indeed "too enigmatic to be very helpful." Field, McKusick and Wroth, Maine Civil Practice, supra.

In such situations, where the law of the particular state is not shown to be in conflict with the federal rule, federal courts will apply Rule 23.1. Gallup v. Caldwell, 120 F.2d 90, 94–95 (3rd Cir. 1941); Mullins v. DeSoto Securities Co., 45 F.Supp. 871, 878 (W.D.La.1942); see 3B Moore's Federal Practice, ¶ 23.1.-15[2] at n. 13. Thus, whether the federal rule or Maine law is applicable, Amoskeag could not maintain a derivative action against the defendants.

■■ From the foregoing, it is evident that Amoskeag, by causing the plaintiff corporations to bring this action, is attempting to accomplish indirectly what it could not do directly. Plaintiffs contend that the Court cannot look beyond the corporate form to the substance of the corporate claims and the true beneficiary thereof. But the four intercompany transactions that are the basis of plaintiffs' claims are typical stockholder claims seeking an accounting for alleged misappropriation and waste of corporate assets by controlling stockholders. Equitable considerations must be applied in such actions. Amen v. Black, 234 F.2d 12 (10th Cir. 1956); Matthews v. Headley Chocolate Co., 130 Md. 523, 100 A. 645 (1917); Home Fire Insurance Co. v. Barber, supra. Nor does characterizing the actions as claims arising under federal statutes save them from the scrutiny of equity. Columbia Nitrogen Corp. v. Royster Co., 451 F.2d 3, 15–16 (4th Cir. 1971) (antitrust laws); Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 213–214 (9th Cir. 1962) (securities laws). See also Edwin L. Wiegand Co. v. Harold E. Trent Co., 122 F.2d 920, 925 (3rd Cir. 1941) (copyright laws). The equitable principle that the corporate form "will not be allowed to be pushed to the extent of furthering injustice rather than justice" is well established, and has been applied to cases where the plaintiff attempted to use the corporate form to achieve results which he could not accomplish in his own right. Western Battery & Supply Co. v. Hazelett Storage Battery Co., 61 F.2d 220, 230 (8th Cir. 1932), cert. denied, 288 U.S. 608, 53 S.Ct. 399, 77 L. Ed. 982 (1933); Shamrock Oil and Gas Co. v. Ethridge, 159 F.Supp. 693 (D. Colo.1958). Since Amoskeag, which did not itself incur any damage as a result of defendants' alleged wrongful acts, and not the corporate plaintiffs, is the real beneficiary of any recovery which might be had in the name of the corporate plaintiffs, the corporate claims must fail for lack of equity on the part of those who would ultimately benefit from any corporate recovery.

The applicable principle was stated long ago by Dean Roscoe Pound, then a Commissioner of the Supreme Court of Nebraska, in the leading case of Home Fire Insurance Co. v. Barber, supra:

> Where a corporation is not asserting or endeavoring to protect a title to property, it can only maintain a suit in equity as the representative of its stockholders. If they have no standing in equity to entitle them to the relief sought for their benefit, they cannot obtain such relief through the corporation or in its own name. (citations omitted). It would be a reproach to courts of equity if this were not so. If a court of equity could not look behind the corporation to the shareholders, who are the real and substantial beneficiaries, and ascertain whether these ultimate beneficiaries of the relief it is asked to grant have any standing to demand it, the maxim that equity looks to the substance, and not the form, would be very much limited in its application. 67 Neb. at 664–665, 93 N.W. at 1031–1032.

In Home Fire, the court sustained a corporate claim, which it considered to be brought at law, to recover company monies wrongfully withdrawn by Barber and converted to his own use. But the court denied recovery by the corporation upon claims, which it considered to be brought in equity, for corporate mismanagement and waste allegedly committed by Barber, where the existing stockholders, who would be the real beneficiaries of a recovery, had acquired

their stock subsequent to the acts complained of, and were hence found to have no standing in equity.

The case of Amen v. Black, *supra,* presented facts similar to the instant case. In *Amen,* a corporation, through its receivers, asserted claims for recovery of the profits allegedly realized by Black, its former president and chairman of the Board, from the improper use of company funds and from the sale of corporate stock which Black had wrongfully obtained from the corporation and later sold to N.C.R.A. The court denied relief to the corporation, holding:

> Looking at the substance of the corporate claims and the beneficiaries thereof, it becomes readily apparent that the principal beneficiary of any recovery on behalf of the corporation would be the N.C.R.A. who became the principal stockholder upon the purchase of a majority of the stock in 1947. And having purchased the stock of the corporation from Black in an arms length transaction, and having received the full value of its purchase, any recovery as stockholder beneficiary of the dissolved corporation would be tantamount to recoupment of the legitimate purchase price of the stock. Obviously there are no equities in such a result, and we therefore hold that the corporate claims must fail for lack of standing to maintain the suit and for want of equity on the part of the beneficiaries in any corporate recovery. 234 F.2d at 23.

Similarly, in Matthews v. Headley Chocolate Co., *supra,* Headley Chocolate Company commenced an action against Matthews and six other former directors and controlling shareholders to recover damages for the alleged wrongful misappropriation of corporate assets. Subsequent to the alleged wrongs, Matthews had sold a controlling interest in the corporation to one Rodda and his associates. After concluding that Rodda would be barred from maintaining a derivative action, the court stated:

The question then is whether this bill can be sustained in the name of the corporation, and, if so, how the defendants can be protected from claims we have spoken of as not entitled to relief. Inasmuch as by the change of the majority of stock those who were minority stockholders at the time of the transactions complained of are now able to have the suit brought in the name of the company, we are of the opinion that it can be maintained, in that name, instead of in the names of the minority stockholders but for their benefit. But while that is so, if there be any recovery by reason of the claims spoken of, it can only be to the extent of the proportions of the sum recovered due such minority stockholders, if any, as are not barred by laches, limitations, acquiescence, or other way sufficient to bar them in equity, and anything recovered should be directed to be paid to them by the corporation. Any defense that could have been made against the minority stockholders if they had sued in their own names should be allowed, notwithstanding the fact that the suit is in the name of the corporation. It seems to us that that course is the only one which in equity and justice can be adopted in this case. The purchasers from Matthews have lost nothing, so far as the bill discloses, and if he deceived them in the sale, they have their remedy against him individually, but they should not be permitted to use the corporate name to veil defects in the title to the stock transferred to them by the former stockholder who received about two-thirds of the amounts claimed to have been improperly paid. 130 Md. at 536–537, 100 A. at 651.

Thus, the court in *Headley Chocolate,* while holding that the corporation had standing to sue, held it could recover only for those minority stockholders who held their shares at the time of the alleged wrongs and who were not barred by any equitable defenses. In the present case, plaintiffs have expressly

disclaimed that they are seeking a proportionate recovery on behalf of the 1% minority stockholders in BAR.

The principle that a suit cannot be brought by a corporation where the ultimate beneficiaries of a corporate recovery would be barred was also applied in Capitol Wine and Spirit Corp. v. Pokrass, 277 App.Div. 184, 98 N.Y.S.2d 291 (1st Dep't.1950), aff'd, 302 N.Y. 734, 98 N.E.2d 704 (1951).

Research has disclosed no case the holding of which is contrary to that of the foregoing authorities. In Central Railway Signal Co. v. Longden, 194 F.2d 310 (7th Cir. 1952), cited by plaintiffs, the court found that there had been no change of ownership of the plaintiff corporation subsequent to the time of the acts complained of. *Id.* at 321. The court's comments on the present question were dictum unnecessary to the decision of the case, and in any event the court seems to be saying no more than that Fed.R.Civ.P. 23(b) (the predecessor of Rule 23.1) does not apply to a suit by a corporation. *Idem.* Furthermore, it does not appear that Longden, the alleged wrongdoer, was a controlling stockholder, or that the owner of 99% of plaintiffs' stock at the time of suit had acquired its shares from stockholders who had participated in Longden's wrongdoing.

Plaintiffs' final argument is that defendants are in no position to assert equity because if recovery is here denied defendants will be able to keep the fruits of their allegedly wrongful acts. The same argument was made by the plaintiff and rejected by the court in Home Fire Insurance Co. v. Barber, *supra*. In the words of Dean Pound:

But it is said the defendant Barber, by reason of his delinquencies, is in no position to ask that the court look behind the corporation to the real and substantial parties in interest. . . . We do not think such a proposition can be maintained. It is not the function of courts of equity to administer punishment. When one person has wronged another in a matter within its jurisdiction, equity will spare no effort to redress the person injured, and will not suffer the wrongdoer to escape restitution to such person through any device or technicality. But this is because of its desire to right wrongs, not because of a desire to punish all wrongdoers. If a wrongdoer deserves to be punished, it does not follow that others are to be enriched at his expense by a court of equity. A plaintiff must recover on the strength of his own case, not on the weakness of the defendant's case. It is his right, not the defendant's wrongdoing, that is the basis of recovery. When it is disclosed that he has no standing in equity, the degree of wrongdoing of the defendant will not avail him. 67 Neb. at 673, 93 N.W. at 1035.

For the reasons stated, defendants' motion for summary judgment dismissing the entire complaint is granted.

It is so ordered.