GODFREY M. HYAMS, In Equity, *vs.* OLD DOMINION COMPANY.

Cumberland.    Opinion April 5, 1915.

*Application for Relief. Breach of Trust. Charter. Directors. Discretionary Powers. Fraud. Holding Corporation. Indispensable Party. Misapplication of Corporate Powers. Ratification. Stockholders.*

1.   A ratification of the acts of directors by the stockholders in meeting assembled is ineffective when it does not appear that the stockholders generally had any knowledge of the acts claimed to have been ratified.

2.   Ratification of ultra vires acts of directors, or of acts done in manifest disregard of the duties of the corporation to its stockholders, and of the legal rights of minority stockholders, is nugatory.

3.   A stockholder seeking a remedy for corporate wrongs must first make application for relief through corporate channels, or allege and prove sufficient reasons why such an application would be futile.    But such application is not necessary where it is alleged, and the case shows, that application would be useless.

4.   Wrongs begun before a stockholder became such, but continued after, may be redressed at his suit.

5.   When it is sought by bill in equity to require a Maine corporation, which owns stock in a New Jersey corporation, the certificates whereof have been transferred in blank, to have the same transferred of record to itself on the books of the New Jersey corporation, the latter corporation is not an indispensable party to the bill.

6.   The court is of opinion that the laws of New Jersey authorize stock in a corporation of that State to be owned and held by a corporation of another State, when empowered by its own State to do so.

7.   Courts will not undertake to control the discretionary powers of the directors of corporations, or of the majority of the stockholders expressed in stockholders' meeting, as to acts intra vires, except in cases of fraud, or in cases of such acts as are a breach of the trust and confidence which are implied by the very nature of the corporate relations.

8.   Courts can and will control corporations with respect to such acts as tend to the destruction of the corporate franchises, and such as are in violation of, or inconsistent with, the charter.    They may and will prevent the abuse, misuse, or misapplication of corporate power prejudicial to the stockholders, and amounting to a breach of trust.

9. The relation between a corporation and its stockholders is essentially contractual. The corporate authority is considered to have been conferred by the stockholders upon a trust and confidence that it will be exercised to effectuate the purpose of the charter.

10. It is a contractual duty of a corporation, and in the nature of a trust, arising from the corporate relations of stockholders among themselves, and with the corporation, that it will perform its corporate functions, according to and within the meaning of, its charter. To abdicate its corporate functions and utterly abandon the performance of its corporate duties, to the prejudice of stockholders, is a breach of duty and trust.

11. The defendant is a holding corporation. More than one-half its assets consist of shares of stock in a New Jersey corporation. These shares constitute more than one-half of the issued capital stock of that corporation. These shares are represented by certificates of stock standing in the name of two of its directors, but in fact transferred in blank and placed in the defendant's vault. For ten years, and from its very organization, it has neglected to have the shares transferred of record to itself. It has not voted upon the shares. It has not directed those in whose name the stock stands of record how to vote. It has taken no corporate action whatever with respect to the stock. The two directors have voted this stock as they pleased. *Held*, that the corporation has been guilty of a breach of trust to its stockholders.

12. When a holding corporation intentionally, persistently and unreasonably deprives itself of the exercise of the highest function and privilege of a stockholder, and so proposes to continue, it is such a breach of its duty to its stockholders, and so far removed from any characteristics of internal management and control, that a minority stockholder may successfully invoke the intervention of the court. It is essentially a breach of trust. It is a perversion of the spirit of the chartered corporate purposes.

On appeal by defendant from final decree in favor of plaintiff. Decree below affirmed with additional costs.

This is a bill in equity in which the complainant, Godfrey M. Hyams, on behalf of himself and all other stockholders of the Old Dominion Company, prays that the defendant, Old Dominion Company, shall be enjoined from causing, making or allowing any further alienation of its assets and that said Company be ordered to get, take and secure the legal title in its own name, to all the shares of stock of other corporations to which it is rightfully entitled, and that a receiver be appointed to take charge of the assets and affairs of said Old Dominion Company, if it does not comply with said order. Answer was filed by defendant to said bill and replication thereto was filed. The cause was heard by a single Justice on the 12th day of December, 1913, upon bill, answer, replication and agreed statement

of facts, and said Justice found that the complainant had sustained by proof the allegations of his bill of complaint and was entitled to a decree accordingly, and ordered a decree to be entered in accordance with the above findings. From this decree, the defendant appealed.

The case is stated in the opinion.

*Isaac W. Dyer*, for complainant.

*Brandeis, Dunbar & Nutter, Edward F. McClellen, and William M. Bradley*, for respondent.

SITTING: SAVAGE, C. J., CORNISH, HALEY, HANSON, PHILBROOK, JJ.

SAVAGE, C. J. Bill in equity in which the plaintiff, a stockholder, on behalf of himself and all other stockholders of the defendant corporation, seeks to have transferred to the defendant certain shares of the capital stock of the Old Dominion Copper Mining and Smelting Company, which it is claimed belong, or should belong to the defendant, but which stand of record in the names of two of its directors, Dodge and Smith. The prayer of the bill is that the defendant "be ordered to get, take and secure the legal title in its own name, to all the shares of stock in other corporations to which it is rightfully entitled," and in particular the shares above referred to. There are other prayers in the bill, but they are not pressed, and need not be specifically stated. The case comes before this court on the defendant's appeal from a decree sustaining the bill.

The parties have agreed upon a statement of facts, and from that statement we glean the following as material to the questions to be decided.

In 1903, the Old Dominion Copper Mining & Smelting Company, a New Jersey corporation, had an authorized capital stock of 200,000 shares of the par value of $25 each, of which 150,000 shares had been issued. The United Globe Mines, a New York corporation, had a capital of 23,000 shares of the par value of $100 each. Both corporations owned mining properties in Arizona, which were near to each other. A large majority of the stockholders of each of these corporations, believing that it would be for the advantage of each corporation, if they operated in harmony, determined to make a practical amalgamation of them by organizing a new corporation to own and hold the stock of these two corporations, and in pursuance of this determination, they organized the defendant corporation, the Old Dominion

Company of Maine. The defendant corporation has an authorized capital stock of 350,000 shares of the par value of $25 each, of which 293,245 shares of the par value of $7,331,125 have been issued. Among the incorporated purposes of the defendant is the following:— "to purchase, acquire, hold, sell or otherwise dispose of, or deal with shares of the capital stock, bonds, evidences of indebtedness or other securities of, or issued by, any corporation or corporations."

By the scheme agreed upon, stockholders in the Old Dominion Copper Mining & Smelting Company, designated by us hereafter as the New Jersey corporation, were to have the right to exchange their stock, share for share, for stock in the Old Dominion Company of Maine. It was provided in effect that 138,000 shares of the Maine corporation should be issued in payment of the entire capital stock, 23,000 shares, of the United Globe Mines, and for $350,000 in cash, in addition. It was also provided, that before the agreement should be made effective, the assent of two-thirds in interest of the outstanding stockholders in the New Jersey corporation, and of all of the stockholders of the United Globe Mines should be secured.

In 1904, in accordance with the scheme thus outlined, the whole of the capital stock of the United Globe Mines was first deposited with a banking house agreed upon, and afterwards transferred to the defendant company for 138,000 shares of its stock and $350,000 in cash. More than two-thirds in interest of the stockholders of the New Jersey corporation deposited their shares, and received in exchange stock in the defendant corporation, share for share. Since then, other shares have been exchanged, so that, in all 155,245 shares in the New Jersey corporation now belong to the defendant. Among the shares in the Maine corporation thus received were 150 shares which after passing through various transfers were purchased by the plaintiff in 1912, in the name of another, and transferred of record to him in May, 1913, and are now owned by him.

The shares in the New Jersey corporation now in controversy which have been exchanged for shares in the defendant were never transferred to the defendant corporation, but were transferred to Cleveland H. Dodge and Charles S. Smith on the books of the New Jersey corporation. The certificates for those shares have upon their backs a transfer in blank signed by Dodge and Smith, and they have all been placed, and now remain, in the defendant's vaults. Smith and Dodge are directors of the defendant corporation, and Smith is vice president.

Smith is president and a director of the New Jersey corporation. Dodge is a director of the United Globe Mines, and the directorates of the three corporations are more or less interlocked otherwise. The directors of Phelps, Dodge & Company, one of whom is Dodge, own severally about one-half of the shares in the defendant corporation.

Dodge and Smith admit that they hold record title to these shares in the interest of the defendant. There has been no written or other formal trust agreement executed between them and the defendant, nor have they made any written declaration of trust respecting this stock. But when the stock of the New Jersey corporation was deposited, in furtherance of the scheme agreed upon, Smith, the president of the New Jersey corporation, was advised by counsel that a legal doubt had been expressed as to whether stock in a New Jersey corporation could, under the laws of New Jersey, be held by a corporation organized under the laws of another State, and the defendant claims that it was because of this uncertainty that Dodge and Smith took title to these shares in their own names, in order that the plan and agreement might be carried out in a lawful manner, and the chance that anyone would raise the question avoided.

The by-laws of the defendant provide that "the Board of Directors shall have the general control and supervision of the business of the corporation, with all the powers that could be exercised by the stockholders, except so far as limited by the vote of the stockholders or by law; may among other things sell, assign, transfer, convey or otherwise dispose of the property, real or personal, of the corporation, and may delegate any part of their power to any officer or committee of the board."

It appears that neither the stockholders in meeting nor the directors as a board have ever passed any vote, directing, sanctioning, or expressly ratifying, or even mentioning the holding of this stock by Dodge and Smith for the defendant corporation. But the fact that the stock stood in the names of Dodge and Smith has been at all times known to a majority in interest of the defendant's stockholders, and to all of its directors. By whose particular authority, unless it be that assumed by Dodge and Smith themselves, the stock was placed in their names is not disclosed.

At the annual meeting of the stockholders in 1905, and at each annual meeting since, "all acts, matters and things entered into and

performed by the officers and directors" have been by unanimous vote "fully and in all respects, ratified, confirmed and approved." Some of the persons who at different times owned the stock which the plaintiff now owns were present at various ones of these annual meetings. But what knowledge they had of the fact that Dodge and Smith held the New Jersey corporation stock is not made to appear, nor is it shown what information was possessed by the minority stockholders in general. The annual balance sheets since 1908, if accessible to the stockholders, or made known to them, would have indicated to them that the defendant had full title to the stock.

The plaintiff never owned any shares in the defendant prior to September, 1912, and there has been no assent by him or by his predecessors in title to the retention of the stock in the names of Dodge and Smith, except such, if any, as has been shown by the foregoing statement.

There has been no dissipation of the assets of the defendant corporation, unless the retention of the title to the stock by Dodge and Smith be regarded as such a dissipation. The dividends in the stock of the New Jersey corporation held by Dodge and Smith are paid directly to them when declared, and by them paid forthwith to the defendant.

The purposes and powers of the defendant corporation, as stated in its certificate of organization, embrace the doing of many kinds of business, other than the holding and owning of shares of the capital stock of other corporations. But so far as the record shows it has never attempted to exercise any of those additional powers. Its entire assets consist of the shares of capital stock of the New Jersey corporation and of the New York corporation, and claims for money loaned to those corporations. It is therefore, so far as any of the rights here involved are concerned, a mere holding corporation, and it is to be treated as such.

From these agreed facts we draw certain conclusions of fact, and state them now without regard to their effect upon the rights of the parties. We think that it must be held that the stock was placed and still remains in the name of Dodge and Smith with the acquiescence and tacit approval of the board of directors. Directors of a corporation must act as a board, but it is not necessary that their action be formal or their votes recorded. *Pierce* v. *Morse-Oliver Building Co.,* 94 Maine, 406. It may be sufficient as to third parties, if they

establish a mutual understanding. *York* v. *Mathis*, 103 Maine, 67. Their action or their mutual understanding may be shown by circumstances or conduct. Cases just cited. When it appears, as it does in this case, that for nine years all the directors have been conversant with the fact that two of their number hold in their names the record title to more than one-half of the assets of the corporation, and have made no objection, it certainly affords very strong evidence of their mutual understanding and unanimous assent.

In the next place we must find that there has been no ratification of the acts of the directors, if any was necessary, by the stockholders. The fact that a majority in interest of the stockholders knew of the situation and approved it, has no legal significance. Stockholders can act only as a body, and in meeting assembled. While it is undoubtedly competent for the stockholders to ratify unauthorized acts of directors, which are within the corporate powers, he who relies upon a ratification has the burden of showing that attempted ratification really ratified. Neither individuals, nor stockholders in a body, can be said to ratify acts of which they have no knowledge. The resolutions of ratification were sweeping. They referred to no particular act. It does not appear that the stockholders generally outside of the directors had any knowledge that the directors had authorized the New Jersey stock to be put into the names of Dodge and Smith. It does not appear that this was known to the stockholders then holding the stock now owned by the plaintiff. Such a ratification is ineffective because it really does not ratify. It is a paper ratification, not a real one. A decent respect for the rights of stockholders, especially of minority stockholders, should require that he who seeks to bind them by votes of ratification should show that the stockholders generally knew specifically what they were voting about. *Camden Land Co.* v. *Lewis*, 101 Maine, 78.

Again, we find that Dodge and Smith have no interest in the stock. Whether they are even naked trustees is left uncertain. They have signed transfers of the stock certificates in blank, and have put them into the defendant's vault. Whether they have delivered them to the defendant in such way as to divest themselves of any actual control of them is not clear. But we think it is immaterial. The stock in fact belongs to the defendant. The certificates of stock are in the physical possession of the defendant. As sole owner in fact it has the undoubted right to reduce them to its legal possession, fill out

the blank transfers, and present them to the proper officer of the New Jersey corporation to be transferred of record to itself. And that is what the plaintiff seeks to have it compelled to do.

Several defenses are offered: 1, that the complainant has not sufficiently attempted to obtain redress by application to the directors or to the corporation itself; 2, that the defendant corporation has duly ratified the holding of the New Jersey corporation stock by Dodge and Smith; 3, that the complainant cannot complain because if any wrong was done it was done long before he became a stockholder; 4, that the holding was approved by his predecessors in title; 5, that a transfer on the books of the New Jersey corporation should not be required in a suit to which that corporation is not a party; 6, that the alleged uncertainty of the law of New Jersey with respect to the susceptibility of stock in any New Jersey corporation to be transferred to and held by a foreign corporation was an adequate reason for having the shares of the New Jersey corporation stand, of record, in the names of individuals, rather than in the name of the defendant; and, 7, that the defendant corporation has the right, with the approval of its directors and a majority of its stockholders, irrespective of any question about the law of New Jersey, to have individuals hold the record title to this stock.

I. It is a wise rule of procedure which requires that aggrieved stockholders seeking remedies for corporate wrongs should first make application for relief through corporate channels, or allege and prove sufficient reasons why such applications would be ineffectual. *Ulmer* v. *Maine Real Estate Co.*, 93 Maine, 324; *Trask* v. *Chase*, 107 Maine, 137. They must apply to the directors or the corporation before they apply to the court, unless it appears from the bill and proof that such application would be useless. But the law requires in this respect no useless formality. The plaintiff in his bill alleges that he has made no application to the directors or corporation, for the reason that such application would be futile. And we are of opinion that his apprehension is well founded. The policy pursued by the directors and the majority interests controlling the defendant corporation is deliberate and of long standing. And whatever the motives for it may be, there is not the slightest reason to be drawn from the history of the corporation to think that the policy would be abandoned at the request or demand of a minority stockholder, but rather the contrary. This point in defense is not tenable.

II.   The matter of ratification by stockholders vote has already been discussed in part.   We will add that if it should turn out as claimed by the plaintiff that the act of the directors in keeping the stock in the names of private individuals, though they were possessed by by-law with full corporate powers, was ultra vires the corporation, or if it should appear that the act was in manifest disregard of the duties of the corporation to its stockholders, and of the legal rights of minority stockholders, the ratification must from the nature of things be nugatory.   In fact, there was no such ratification as should be held to bind non-assenting stockholders with regard to unauthorized acts of the directors not known, or made known, to the body of the stockholders.

The matter of ratification, however, is not very important.   For if the act of the directors was ultra vires the corporation, as the plaintiff claims, ratification would not help it.   And if, as the defendant claims, the act was intra vires and proper, ratification was unnecessary.

III.   The third objection is that the plaintiff cannot complain because the wrong, if any, was done before the plaintiff became a stockholder.   One answer to this, and a sufficient one, is that the wrong is a continuing one.   If there was a wrong before the plaintiff became a stockholder it is no less a wrong since.   It is an existing condition, alleged to be a corporate wrong, that he complains of. This point is not sustainable.

IV.   The claim that the holding of the stock by Dodge and Smith was assented to and approved by the plaintiff's predecessor in title does not appear to be true in fact.   At least it is not shown.   Whether his predecessors were among those stockholders who knew of it does not appear.

V.   We think the New Jersey corporation is not a necessary party to this suit.   As a corporation it can have no interest in the ownership of its own capital stock.   The New Jersey corporation is not asked to do anything.   The bill assumes that its officers will upon request, and as a matter of customary business, transfer the title of record of the Dodge and Smith stock to the defendant, who is the owner.

VI.   The defendant contends that it was proper as a matter of business policy for it to allow the record title to the New Jersey stock to remain in the names of Dodge and Smith, on account of the

doubts expressed as to whether under the laws of New Jersey, stock in a New Jersey corporation can legally be held by a corporation of another State. This point is material, because if it cannot be done, it would be futile to grant the plaintiff's prayer and direct the defendant to try to have it done. If such were the case, it might be that the promoters of the defendant corporation would find it expedient to adopt some other method by which they could adjust themselves to the law. But we think there is no considerable doubt with respect to the law of New Jersey.

We do not propose to discuss the law of New Jersey at length. It is settled law generally that one corporation cannot hold the capital stock of another corporation, without legislative authority. But it appears from the cases cited from the New Jersey courts that by statute in that State, "any corporation may purchase, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of the shares of the capital stock of . . . . any corporation of this or any other state, and while owner of such stock may exercise all the rights, powers and privileges of ownership, including the right to vote thereon." Under this statute there is no doubt that a New Jersey corporation can hold stock in a Maine corporation. But here the question is, can a Maine corporation hold stock in a New Jersey corporation? Will the New Jersey law permit it? The case of *Warren* v. *Pim*, 66 N. J., Eq. 353 (1904), which has been discussed by counsel, is somewhat illuminating, but by no means decisive. The question in that case was not whether a corporation created by another State could own and hold shares in a New Jersey corporation, but whether an English corporation or association organized purely as a voting trust, and having no beneficial ownership of the shares themselves could so own and hold. The question was answered in the negative, but for reasons in no one of which did the majority of the court concur. The opinions of the Justices are interesting, however, in this connection, inasmuch as they show the tendency of judicial thinking, though the expressions touching the power of a corporation of another State to hold stock in a New Jersey corporation are mere dicta. Chancellor Pitney, now Mr. Justice Pitney, said that he could find nothing in the New Jersey statute that satisfied him that any discrimination was intended to be made against alien or foreign corporations, either as to their ownership of such stock, or as to their right to vote upon it. Other Justices expressed similar views. One

intimated that the corporations of a sister State, whose laws permitted them the right to hold stock in the corporations of another State, might invoke the doctrine of comity to support them in exercising a similar right in New Jersey corporations. Some of the Justices expressed no opinion on this question as it was not in issue. No one advised that the power did not exist.

In *State* v. *Atlantic City and Shore R. R. Co.*, 77 N. J. L., 465, (1909), which was an information in the nature of quo warranto, the question was whether a New Jersey railroad corporation could buy and hold the capital stock of another New Jersey railroad corporation. The power of a corporation of another State to hold stock in a New Jersey corporation was not involved. But Chancellor Pitney, speaking for the court, took occasion to refer to the case of *Warren* v. *Pim*, and to make the cautionary observation that a majority of the court had not agreed upon any legal proposition involved in that case. It is not improper to add that the question before us was not involved in that case.

But in *Denver City Water Works Co.* v. *American Water Works Co.*, 82 N. J., Eq. 365, (1913), we get a little clearer light. The plaintiff, a Colorado corporation, held stock in the defendant, a New Jersey corporation, which was insolvent, and began proceedings to wind up the affairs of the defendant. Later it applied to the court to direct the receiver to discontinue a certain suit commenced by him. Objection was made that the plaintiff had no interest to protect, was a mere volunteer, and had no right to invoke the judgment of the court. Howell, V. C. said: "I think it sufficiently appears that the complainant is still the owner or holder of shares of stock in the defendant, the American Water Works Company, and if so, there can be no question of its right to prosecute this matter." 81 N. J., Eq. 139. The Court of Errors, on the appeal from the Vice Chancellor's decree, said:—"The decree appealed from will be affirmed, for the reason stated in the opinion filed below by Vice Chancellor Howell." 82 N. J., Eq. 365. Here it seems to us is a distinct recognition of the power of a corporation of another State to hold capital stock in a New Jersey corporation. It is true the question was not debated. It seems to have been assumed. If the corporation of another State has not lawful power to hold stock in a New Jersey corporation, or to put it the other way, if the stock of a New Jersey corporation is not susceptible, by reason of New Jersey law, of being held by a corpora-

tion of another State, it is difficult to perceive how an outside corporation by reason of its attempted, but unauthorized holding of stock, could get a standing in court to proceed for the appointment of a receiver and the winding up of the New Jersey corporation, whose stock it had. Its status in court depended solely upon its rights as a stockholder. If a stockholder, it could be recognized; otherwise not. This point was decided. If an outside corporation can be enough of a stockholder to be able to cause the dissolution of the corporation whose capital stock it held, it would seem that it should be enough of a stockholder to hold its stock in its own name, and to require the transfer of record to it of any stock that it owns. It is our judgment that the law of New Jersey permits a corporation of another State, when empowered by its own State to do so, to hold shares in a New Jersey corporation.

VII. We are now brought to a consideration of the fundamental question in this case. It is this. Has a minority stockholder in a corporation the right to insist, under such circumstances as are shown in this case, that it shall hold in its own name the shares of capital stock which it owns in another corporation?

The facts, briefly stated, are these. The defendant is a mere holding corporation. More than one-half of its estate and assets consist of shares of stock in the New Jersey corporation. These shares constitute more than one-half of the issued capital stock of that corporation. It, therefore, by stock ownership, has the right and the power to control the New Jersey corporation. For ten years it has neglected, and apparently is now unwilling, to have the record title to those shares transferred to itself, but has tacitly permitted them to stand in the names of two of its officers, although the certificates of stock, with transfers signed in blank, have all the time been in its physical custody. It has taken no corporate action with respect to these shares. It has not voted at the corporate meetings. Neither has the corporation itself, nor have the directors, so far as the case shows, directed the holders how to vote upon any matter at stockholders' meetings. As a corporation, it has abandoned the exercise of the rights, powers, and privileges appertaining to stock ownership, and has left the exercise of those rights, powers and privileges to the will of individuals, who have no interest in these shares, and who are not in any way made accountable to it for the manner in which they exercise functions committed to them, not by the cor-

poration itself, but by stockholders in the corporation, holding a controlling interest. This state of things has existed from the very organization of the corporation. And as it seems to be in accord with the settled policy of the majority stockholders, it is likely to continue, unless minority stockholders may interfere and obtain a remedy from the court.

The positions of the parties may be briefly stated as follows:—The plaintiff contends that the conduct of the defendant in permitting its stock in the New Jersey corporation to be held of record and voted by individuals in the manner stated has been ultra vires, beyond the legitimate power of the corporation; and that it has been such wilful neglect of its corporate duty to its stockholders as to constitute a corporate breach of trust. The defendant contends that the conduct complained of has been purely intra vires, that it related to the internal management of its business affairs, and that minority stockholders have no remedy.

The general policy of the law is so well settled that the citation of many authorities is unnecessary. It is well settled that courts will not undertake to control the discretionary powers of the directors, or of the majority of the stockholders expressed in stockholders' meetings, as to acts intra vires. Such acts·cannot be questioned by minority stockholders, except in cases of fraud, and, as for a breach of trust, of such acts as imperil the existence of the corporation itself. As to acts, within the power of the corporation, which concern the internal management of the corporation,—as to questions of corporate policy and economy, questions of business discretion and judgment, the majority stockholders and the directors to whom the corporate powers are delegated, ordinarily have absolute control, and the minority must submit. The courts will not undertake to pass upon the wisdom or unwisdom of such corporate acts. 2 Cook on Corporations, Sec. 684; 4 Thompson on Corporations, Sec. 4443.

On the other hand, corporate powers are limited to these expressly granted and the incidental implied powers necessary to carry into effect the powers so expressly granted. The exercise of any other power is ultra vires. *Franklin Co.* v. *Lewiston Inst. for Savings,* 68 Maine, 43; 2 Cook on Corporations, Sec. 669; Morawetz Priv. Corp., Sec. 682. The relation between a corporation and its stockholders is essentially contractual. The charter is the embodiment of the contract. See same cases. The rule of the majority over the minority

as to acts intra vires is implied from the very nature of the contract. But the corporate authority is considered to have been conferred by the stockholders upon the trust and confidence that it will be exercised within the chartered powers, and with a view to advance the interests of the stockholders. *Dodge* v. *Woolsey,* 18 How., 331; *Wright* v. *Oroville M. Co.,* 40 Cal., 20; *Forbes* v. *Memphis, etc., R. Co.,* 4926 Fed. Cases. No stockholder is bound to submit to the doing of ultra vires acts. Such submission is not a part of his contract. He may have relief from ultra vires acts. 2 Cook on Corporations, Sec. 669.

It seems also to be well settled that for practical purposes a corporation may in some respects be treated as a trustee for the benefit of its stockholders, whenever necessary for the protection of their interests. In a sense it holds the corporate property in trust for the stockholders. *Peabody* v. *Flint,* 6 All., 623; *Sawyer* v. *Hoag,* 17 Wall., 623; 1 Morawetz Priv. Corp., Sec. 237.

There is no doubt, we think, that a court of equity may, at the instance of a stockholder, afford a remedy from the consequences, not only of fraudulent acts of the corporation, or its officers, but of such acts as are a breach of the trust and confidence which are implied by the very nature of the corporate relations. It may control a corporation and its officers, and restrain them from doing acts even within the scope of corporate authority, if such acts would amount to a breach of the trust upon which the authority had been conferred. *Dodge* v. *Woolsey,* supra; *Wright* v. *Oroville M. Co.,* 40 Cal., 20; *March* v. *East R. R. Co.,* 40 N. H., 548; *Taylor* v. *Holmes,* 14 Fed., Rep., 498; *Forbes* v. *Memphis, etc., R. R. Co.,* supra. It may also control them with respect to acts tending to the destruction of the corporate franchises, and acts in violation of, or inconsistent with, the charter. It may prevent the misuse or the misapplication of corporate power prejudicial to the stockholders, and amounting to a breach of trust. *Pond* v. *Vermont Val. R. R. Co.,* 12 Blatchf., 280.

It should be borne in mind that this is not a bill brought in behalf of a corporation which is unwilling or unable to sue, against directors who have undertaken to do ultra vires or otherwise illegal acts, but one against the corporation itself to compel it to perform a corporate duty which it is claimed it owes to all its stockholders, and a duty which it is capable of performing. That a corporation owes duties to its stockholders outside of mere business duties we think should admit of no question. One such duty is that it will perform its

corporate functions, according to, and within the meaning of, its charter. The manner of performing those duties may be left to the discretion of its directors, or majority stockholders. But the corporation should not be permitted to abdicate its corporate functions and utterly abandon the performance of its corporate duties, to the prejudice of stockholders. These are matters which involve more than mere internal administration, and they are matters which affect the interest of each individual stockholder.

We recur again to the facts. The defendant corporation is the owner in fact of more than $3,500,000 of the capital stock of the New Jersey corporation. It is the owner of a controlling interest. Its one corporate power, involved in this inquiry, is the power to "hold" it. Growing out of that power is a duty to hold it so as to enjoy the privileges of ownership. That we think is necessarily implied, in the case of a holding corporation. For ten years it has neglected, and, as we must assume, now declines, to become the owner of record. As none but stockholders of record can vote, *Warren* v. *Pim*, supra, it has thereby voluntarily disenabled itself from performing its most important function as a stock owner. It has permitted that function to be usurped, so far as minority stockholders are concerned, by individuals. It has had no corporate voice in the management of the New Jersey corporation. It has subjected itself to the liability of loss, with respect to the shares themselves. In the present status it is unable to perform the duties which it owes to its stockholders.

We do not say that a corporation may not, for business reasons, hold property in the name of another. We do not say that it may not so hold temporarily the capital stock which it owns in another corporation. What we do say is that when a holding corporation, intentionally, persistently, and unreasonably deprives itself of the exercise of the highest function and privilege of a stockholder, and proposes so to continue, it is such a breach of its duty to its stockholders, and so far removed from any characteristics of internal management and control, which the majority stockholders may properly exercise, that a minority stockholder may invoke the intervention of the court. It is essentially a breach of trust. If a corporation has no lawful power to give away its property,—and it has none,—no more should it have authority to divest itself of corporate power and virtually to give away to others the exercise of its essentially corporate functions.

The essential purpose of such a holding corporation as the defendant is, is not only to hold shares of stock, but so to hold them as to be able to vote upon them, and give them their proper effective influence in the management of the subsidiary corporation. For such a holding corporation to decline to hold in its own name the shares of stock that it owns, and thereby to abdicate its functions and privileges as a stock owner seems to us to be a perversion of the spirit of the one corporate power which it has so far undertaken to exercise. It is inconsistent with the character of the contractual duties which it owes to its stockholders. It is not only a breach of trust, but it is a neglect to perform the duties which are implied from the very fact that it is a holding corporation.

It is no answer to say that the same gentlemen who now hold of record, and vote upon, these shares, will, by reason of their interests, and of the intercorporate associations, be able to control the exercise of the defendant's privileges of stock ownership, after they shall have been transferred to it of record. Whatever shall be done then will be done under corporate responsibility, of which there is none at present. Besides that, it is, humanly speaking, certain that the gentlemen who now control the defendant, and in whose interests Dodge and Smith are supposedly acting, will not do so forever. We think the bill is sustainable.

*Decree below affirmed with additional costs.*