**John J. GORMAN, et al., Plaintiffs,**

v.

**William COOGAN, et al., Defendants.**

**No. CIV.03–173–P–H.**

United States District Court,
D. Maine.

July 28, 2003.

Richard A. Goren, Sean T. Carnathan, Rubin, Hay & Gould, P.C., Framingham, MA, for Plaintiffs.

Deirdre M. Smith, Drummond, Woodsum & Macmahon, Portland, ME, James T. Kilbreth, Verrill & Dana, Portland, ME, for Defendants.

## ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR TEMPORARY RESTRAINING ORDER

HORNBY, District Judge.

On July 11, 2003, I granted the plaintiffs' *ex parte* request for a temporary restraining order ("TRO") and enjoined the Board of Directors of Firstmark Corporation ("Firstmark") from using company funds to pay legal expenses of the director defendants in this lawsuit. Limited Ex–Parte TRO (Docket No. 17). On July 16, 2003, after notice, I held a full hearing on the request for the TRO, as well as on the plaintiffs' motion for preliminary injunction. I now DISSOLVE the TRO and DENY the plaintiffs' motion for a preliminary injunction.

### A. BACKGROUND

This is not the first time I have seen the major parties in this lawsuit. Just a year ago, the roles were reversed and some of these defendants were suing one of these plaintiffs here in federal court. Then, H. William Coogan, Jr. ("Coogan"), and Susan Coogan, as Trustee of the H. William Coogan Irrevocable Trust, were seeking injunctive relief against John Gorman ("Gorman") and the then current members of the Firstmark Board of Directors. *Coogan v. Firstmark Corp.*, No. 02–CV–165 (D.Me.2002). In that lawsuit as in this one, control of Firstmark was the issue between Coogan and Gorman, and the dispute then and now was over the issuance of Firstmark stock and voting control. The parties settled that lawsuit on the premise that the Coogans owned a controlling interest in Firstmark. Pls.' Prelim. Inj. & TRO Mem. at 2 (Docket No. 13). Gorman and other directors resigned, permitting Coogan to take control of the board. *Id.* The earlier lawsuit was dismissed without prejudice, however, and apparently any settlement agreement (which I have not seen) does not resolve this dispute. As a result, now that some time has passed and disagreements have continued to fester, Coogan and Gorman are back in the same fight for control. Now Gorman has recruited some other shareholders as plaintiffs, and instead of Coogan challenging shares issued while Gorman controlled the Board, Gorman is challenging shares issued to Coogan.

What the plaintiffs seek in this lawsuit is to undo the October 2002 election that followed the earlier settlement and put Coogan in control. Their premise is that no quorum was present for the meeting. Pls.' Prelim. Inj. & TRO Mem. at 5. To support that premise, they must go all the way back to 1996 when Coogan first became involved with Firstmark by merging his title insurance company into Firstmark. *Id.* at 10–11.[1] Through a series of

---

[1] The Coogans and Donald Cruikshanks have been involved in Firstmark affairs since 1996. Verified Compl. ¶ 2 (Docket No. 1). Of the plaintiffs, Gorman first became involved in 1998. *Id.* ¶ 12. Kurt Rechner, jointly with his wife, recently purchased 20,000 shares of

arguments based upon the adoption of an assertedly fraudulent and invalid amendment to Firstmark's Articles of Incorporation during the 1996 merger, the failure to obtain stockholder approval of the merger, the subsequent issuance of invalid shares of preferred stock, manipulation of Firstmark's stock price thereafter to affect the conversion factor for the preferred stock, improper issuance of common stock in 1997, fraud in an alleged tender offer in June 2002, and improper voting of street name stock at the October 2002 election, the plaintiffs claim that the purported October 2002 election of Firstmark's current board of directors was void for lack of a quorum and fraud. *See id.* ¶¶ 15–24.[2] Based on these assertions, the plaintiffs make derivative claims on behalf of Firstmark and direct claims on behalf of themselves, including violations of sections 13(d), 14(a), 14(d) and 14(e) of the Securities and Exchange Act. 15 U.S.C. §§ 78m(d), 78n(a), 78n(d) and 78n(e). The plaintiffs also assert state law claims of breach of fiduciary duty, common law fraud, negligent misrepresentation and violations of various sections of the Maine Business Corporation Act, 13–A M.R.S.A. § 101 *et seq.*

At the outset of their lawsuit, the plaintiffs seek a preliminary injunction enjoining the Firstmark Board of Directors from indemnifying directors' legal expenses in this lawsuit, from pursuing an already pending lawsuit against Alizera Ezami (a former director), Barry Morrow (a former chief financial officer) and Tecstar Electro Systems, Inc. (the seller of Firstmark's recently acquired operating business[3]) in North Carolina state court, and from taking any action out of the ordinary course of business without the prior written consent of the plaintiffs. Entering into any single contract for over $5,000 or for more than one year, or into any number of transactions that collectively exceed $10,000, is among the actions specified as outside the ordinary course of business. Pls.' Proposed Prelim. Inj. (Docket No. 13). The plaintiffs also ask me to enjoin Coogan, Susan Coogan and Cruikshanks from buying or selling Firstmark stock.

The record for the preliminary injunction motion consists of the verified complaint, affidavits filed by the plaintiffs, testimony presented by the defendants at the hearing, and the exhibits furnished by the parties.

**B. TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION STANDARD**

■ To obtain preliminary injunctive relief or maintain their temporary restraining order, the plaintiffs must demonstrate the following: (1) they will suffer irreparable injury if injunctive relief is not granted; (2) such harm to the plaintiffs outweighs any harm that a grant of injunctive relief would inflict on the defendants; (3) they have a likelihood of success on the merits; and (4) the public interest will not be adversely affected by the granting of injunctive relief. *Securities and Exchange*

---

Firstmark in May 2002. *Id.* ¶ 13. Only the Whitney plaintiffs (actually their parents from whom they inherited their 3,289 shares) were around for the initial transactions the plaintiffs challenge. *Id.* ¶ 14.

**2.** Specifically, the plaintiffs claim that Coogan's, Susan Coogan's and Cruikshanks' 2,180,286 shares are void as a matter of law; Coogan fraudulently obtained the proxies for 1,941,788 shares; and Coogan acquired 477,-701 shares in an unlawful tender offer. *See* Pls.' Prelim. Inj. & TRO Mem. at 23–24.

**3.** In 1999, Firstmark sold its title insurance business, leaving it without a primary operating business. Operating under a temporary exemption from the Investment Company Act of 1940, Firstmark acquired assets of Tecstar in July 2002. Firstmark's Opp'n Mem. at 3–5 (Docket No. 24).

*Commission v. Fife,* 311 F.3d 1, 8 (1st Cir.2002); *Planned Parenthood League v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). I will address each of the four factors.

### (1) Irreparable Injury

■ Ordinarily, the availability of monetary damages prevents a plaintiff from showing irreparable injury. Many of the plaintiffs' claims in this lawsuit are susceptible to monetary relief. There is an exception, however, where a plaintiff corporation faces imminent bankruptcy without the preliminary injunction. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Public Serv. Co. v. Patch,* 167 F.3d 15, 27 (1st Cir.1998); *Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373, 1382 (6th Cir.1995). The plaintiffs relied on that exception for their *ex parte* TRO request, but it is not clear whether they also rely on it for their preliminary injunction argument. The cases seem to allow it for the derivative claims on behalf of Firstmark, assuming that the plaintiffs can make the necessary evidentiary showing. For evidence the plaintiffs point solely to two letters to Firstmark shareholders that, they say, describe a company whose existence is at risk. Pls.' Prelim. Inj. & TRO Mem. at 3 (Exs. 33, 37); Pls.' Reply at 2 (Docket No. 29). The letters certainly are not full of good news for Firstmark shareholders. They describe serious problems in the aerospace industry, the industry upon which Firstmark revenues depend; an unexpectedly large loss in 2002 immediately upon acquiring Firstmark's new business; and continuing market uncertainty. But they also describe cost cut-

ting measures, reduction in the amount of operating losses, recent profitable months and a remaining backlog of orders. The reference to recent improvement is supported by the uncontradicted live testimony of Coogan at the hearing, and the plaintiffs have offered no other evidence. *See* Hr'g Tr. (July 16, 2003) at 106–08. This is not enough to show a company whose existence is at such risk that the ordinary remedy of damages is not adequate.[4]

Alternatively, the plaintiffs argue that the improper election of Firstmark's board is sufficient to establish irreparable harm. *See* Pls.' TRO & Prelim. Inj. Mem. at 25–26. The cases cited by the plaintiffs do not support this proposition, but rather establish that equitable permanent relief, rather than damages, may ultimately be the appropriate remedy for such an injury. *See Hyams v. Old Dominion Co.,* 113 Me. 294, 93 A. 747, 752–53 (1915); *MM Cos. v. Liquid Audio, Inc.,* 813 A.2d 1118, 1121, 1132–33 (Del.2003). The caselaw does not establish that preliminary injunctive relief is merited.

"Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985); *see also Cent. Point Software, Inc. v. Global Software & Assessories, Inc.,* 859 F.Supp. 640, 644 (E.D.N.Y.1994) ("[T]he period allowed to elapse prior to seeking a preliminary injunction need not rise to the level of laches to bar preliminary injunc-

---

**4.** In *Doran,* 422 U.S. at 932, 95 S.Ct. 2561, *Patch,* 167 F.3d at 27–28, and *Questar,* 52 F.3d at 1381–82, the courts were presented with uncontradicted evidence that in the absence of injunctive relief, the plaintiff company would suffer economic collapse or insolvency. Here, the plaintiffs have not presented such compelling evidence and the defendants have rebutted the plaintiffs' allegations that Firstmark is on the brink of financial ruin. Moreover, I note that the plaintiffs may also have some relief against the individual defendants for some of their claims.

tive relief."). In this case, the time for urgent action was a year ago when Gorman and Coogan were last before this Court. Although concern was raised about the validity of the Coogans' holdings then, Gorman reviewed his options and determined to let Coogan take control. As a result, the plaintiffs are asking me now to grant preliminary injunctive relief not for something about to happen, such as a pending tender offer or imminent illegal payment using company funds, but rather to regulate corporate officers on account of actions and events that have already taken place. Gorman may have refined his claims and uncovered more facts since the events of last summer, and he may pursue this lawsuit and ultimately be successful. But the extraordinary relief of a preliminary injunction is not appropriate where the basic controversy was known in last year's abandoned lawsuit.[5]

### (2) Balance of Harms

The defendants have presented evidence that supports their claim that the injunctive relief that the plaintiffs seek would hobble the company and might well provoke its demise. See Hr'g Tr. (July 16, 2003) at 108–10, 175. Specifically, Firstmark is seeking new markets for its aerospace parts business in the military sector. Pls.' Prelim. Inj. & TRO Mem. at Ex. 33.

The drastic contract limitations requested by the plaintiffs would foreclose much of that effort. I conclude that the harm to the defendants outweighs any harm to the plaintiffs in denying the injunction.[6]

### (3) Likelihood of Success on the Merits

On the merits, the various counts in the verified complaint fall into two categories: claims concerning control of Firstmark and claims concerning improper use of corporate resources. On their motion for preliminary injunction, the plaintiffs have argued a likelihood of success on only the former. (In their legal memorandum, they also refer to improper self dealing but only as evidence of irreparable injury, not as part of their substantive claims. See Pls.' Prelim. Inj. & TRO Mem. at 3–5, 26.) Under this part of the preliminary injunction analysis, therefore, I will not consider the likelihood of success on the plaintiffs' claims concerning improper use of corporate resources.

I summarized at the outset the plaintiffs' theory as to why the Coogans are not entitled to control Firstmark. The plaintiffs' lawyers have great confidence in the merits of their clients' position and their papers show that they have gone to great lengths to assemble evidence to document their far reaching charges. Suffice it to say at this point, however, that they also

---

**5.** It is true that Rechner and the Whitneys were not individually named parties in the previous lawsuit. But they are small players in this battle for control between Gorman and Coogan. (In fact, Rechner was directly involved as Chief Financial Officer and Treasurer of Firstmark in activities leading up to that lawsuit. See Ex. 6 to Verified Complaint in Civ. No. 02–165–P–H.) In any event, independent of the Gorman delay discussed in text, all of the plaintiffs in this case, including Rechner and the Whitneys, have failed to persuade me that they will suffer irreparable harm here if injunctive relief is not granted, and that their harm outweighs the harm to the defendants if an injunction is granted.

**6.** The plaintiffs also asked that I enjoin Coogan, Susan Coogan and Cruikshanks from selling their Firstmark stock because the allegedly void shares would not be subject to challenge if transferred to a good faith purchaser. See 11 M.R.S.A. §§ 8–1105, 8–1202, 8–1303. But they have made the argument only in passing, and the defendants have largely ignored it. While the balance of harms analysis might come out differently for the reasons stated in text, I am not prepared to say that there is a sufficient likelihood of success to merit preliminary injunctive relief. (This argument pertains only to the stock issued pursuant to the 1996 merger.)

face daunting hurdles. These hurdles include overcoming the applicable statute of limitations for transactions dating back to 1996, challenging the validity of an extant legal opinion supporting the 1996 merger, fashioning an appropriate remedy for any invalid stock issued pursuant to the 1996 merger where the Coogans and Cruikshanks gave something of value in exchange, significant securities laws issues in determining whether the alleged tender offer actually violated the Williams Act, and their success on all of these claims in order to prove the lack of a quorum at the October 2002 meeting of stockholders. The likelihood of success is certainly not enough to overcome the presumption against preliminary injunctive relief that the analysis under factors 1 and 2 produces.

### (4) Public Interest

This case does not affect the public interest. It is a private dispute over money and property, in this case the assets represented by Firstmark.

For all these reasons, I DISSOLVE the temporary restraining order[7] and DENY the motion for preliminary injunction.

SO ORDERED.

---

7. By its terms, the TRO expired on the date of the full hearing, July 16, 2003, but was extended by consent of the defendants until this decision.