2011 ME 137

**Gary VOISINE**

v.

**Robert J. BERUBE et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2011.
Decided: Dec. 29, 2011.

David C. King, Esq., and Brent A. Singer, Esq. (orally), Rudman Winchell, Bangor, for appellant Robert Berube.

William J. Smith, Esq. (orally), Smith Law Office, LLC, Van Buren, for appellee Gary Voisine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1]   This appeal arises from a shareholder's derivative action pursuant to 13–C M.R.S. §§ 751–758 (2010) filed by Gary Voisine on behalf of Valley Firewood and Tree Farm, Inc. ("Valley") against Valley and Robert J. Berube, a shareholder and president of Valley.  Berube appeals from the judgment entered in the Superior

Court (Aroostook County, *Cuddy, J.*) following a jury-waived trial, finding that Berube breached his duty to act in good faith toward Valley, pursuant to repealed 13–A M.R.S.A. § 716 (1981 & Supp.1999),[1] and awarding damages to Valley in the amount of $1,500,000, with half of that sum, $750,000 plus interest and costs, to be paid over to Voisine.

[¶ 2]   On appeal, Berube contends that the court erred in finding that (1) Berube deprived Valley of assets, causing losses to the corporation of $1,500,000 over the years 2001–2007; (2) Voisine, after participating in the sale and division of assets of Valley, had standing to bring the derivative action for Valley's lost profits; and (3) Valley, the corporate real party-in-interest, had a substantive claim for lost profits after 2001.  Because Voisine lacked standing to bring his claim as a shareholder derivative action, we vacate the judgment.

## I.   SHAREHOLDER DERIVATIVE ACTIONS

[¶ 3]   Before considering the history of this case and the issues presented on appeal, it is useful to review the law governing shareholder derivative actions and the distinctions between principles governing shareholder derivative actions and principles governing actions raising similar claims between individuals, such as actions claiming breach of fiduciary duty.

[¶ 4]   In a shareholder derivative action, a shareholder of a corporation brings an action on behalf of the corporation that seeks to recover damages from other stockholders or corporate management for fraud, breach of fiduciary duty, or

---

**1.** Title 13–A M.R.S.A. § 716 (1981 & Supp. 1999) was repealed by P.L.2001, ch. 640, § A–1 (effective July 1, 2003) and replaced by ch. 640, § A–2 (effective July 1, 2003) (codified at 13–C M.R.S. § 831 (2010)).  The court

properly applied 13–A M.R.S.A. § 716 because it found that Berube breached his fiduciary duty to Valley in 2000, prior to repeal of the statute.

breach of the duty of good faith and fair dealing. "A derivative action is an extraordinary process where courts permit 'a shareholder to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own.'" *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir.2010) (quoting *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir.1983)).

[¶ 5]  In Maine, shareholder derivative actions are governed by 13–C M.R.S. §§ 751–758. A "derivative proceeding" is defined as "a civil suit in the right of a domestic corporation...." 13–C M.R.S. § 751(1). To bring a derivative action, a shareholder must have standing. Standing is defined in section 752 as follows:

> A shareholder may not commence or maintain a derivative proceeding unless the shareholder:
>
> **1. Shareholder at time of act or omission.** Was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time; and
>
> **2. Represents interests.** Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

[¶ 6]  Prior to commencing a derivative action, section 753 requires that a shareholder has made "a written demand ... upon the corporation to take suitable action" and that ninety days have expired from the date of demand, unless the shareholder has been notified that the demand has been rejected by the corporation.

[¶ 7]  Maine and sixteen other states have adopted "in full" the derivative action provisions of the Model Business Corpora-

tion Act.[2] 2 ABA, *Model Business Corporation Act Annotated*, § 7.40 at 7–284 (4th ed. 2008). Therefore, precedent in other states can provide a useful guide to application of the derivative action provisions in Maine.

[¶ 8]  Derivative actions are also subject to Rule 23A of the Maine Rules of Civil Procedure, which is similar to Rule 23.1 of the Federal Rules of Civil Procedure governing shareholder derivative actions. *See* 2 Harvey, *Maine Civil Practice* § 23AB:2 at 601 (3d ed. 2011). The 2004 Advisory Committee Notes supporting revision of M.R. Civ. P. 23A state: "In keeping with 13–C M.R.S.A. § 752(2), revised Rule 23A makes the focus of the required fair and adequate representation by the plaintiff the interests of "the corporation" and not 'the shareholders ... similarly situated.'" The Advisory Committee Notes further state:

> New [s]ection 752 requires that the plaintiff 'fairly and adequately represent the interests of the corporation in enforcing the right of the corporation.' That new requirement of [s]ection 752 is intended to better reflect the nature of a derivative action, where the plaintiff stands in the shoes of the corporation and not the shoes of other shareholders.

[¶ 9]  Commentary in the ABA's *Model Business Corporation Act Annotated* § publication states: "The same breach of fiduciary duty may injure both the corporation and minority shareholders and may thus provide the basis for both direct and derivative claims." 2 ABA, *Model Business Corporation Act Annotated*, § 7.40 at 7–289; *see also Quinn*, 620 F.3d at 1013–14; *Gentile v. Rossette*, 906 A.2d 91, 93, 99–100 (Del.2006).

---

**2.** The Model Business Corporation Act was adopted in Maine as the Maine Business Corporation Act by P.L.2001, ch. 640 (effective July 1, 2003). The derivative action provisions were adopted by section A–2 of that law.

[¶ 10] There is no pending concurrent individual direct claim in this case. An individual action was commenced by Voisine against Berube, but that action was abandoned before this action was commenced. Thus, the only issues properly before the court in this derivative proceeding are whether Valley itself was damaged and suffered losses as a result of Berube's conduct and whether Voisine has standing to bring the derivative action on Valley's behalf.

[¶ 11] Review of those questions is governed by several principles.

[¶ 12] First, in a derivative action, a shareholder has no standing to bring claims on behalf of the corporation if the shareholder participated or acquiesced in division or sale of the assets of the corporation or other acts about which the shareholder complains in the derivative action. *See Forbes v. Wells Beach Casino, Inc.,* 307 A.2d 210, 223 n. 10 (Me.1973) ("stockholder has no standing if either he or his vendor participated or acquiesced in the wrong ...."); *see also Hyams v. Old Dominion Co.,* 113 Me. 294, 302, 93 A. 747 (1915). This equitable principle from *Hyams* was cited with approval in another case that arose in northern Maine, the United States Supreme Court's seminal opinion on shareholder standing, *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.,* 417 U.S. 703, 714, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974).

[¶ 13] The standing rule articulated in these Maine precedents is reflective of the generally-applicable rule that "a shareholder ordinarily will be estopped from suing derivatively if he has participated in the wrong complained of, ratified it, or acquiesced in it." Wright, Miller & Kane, *Federal Practice and Procedure* § 1834 at 143 (2d ed. 1986); *see also Rosenfeld v. Schwitzer Corp.,* 251 F.Supp. 758, 762 (S.D.N.Y.1966) (rule denying derivative action standing to shareholders who have acquiesced in or participated in corporate transactions is designed to "prevent speculation by the stockholder on the results of corporate transactions, with the object of accepting the advantages if they turn out well or challenging them if they are not beneficial").

[¶ 14] Second, a shareholder loses standing to pursue a derivative action when the corporation has sold or divided its assets with the approval of a majority of the shareholders. *See Lewis,* 719 F.2d at 1047–48.

[¶ 15] Third, a shareholder in a derivative action is limited to asserting the substantive rights of the corporation rather than his own personal claims. *See Quinn,* 620 F.3d at 1012; *Spickler v. York,* 566 A.2d 1385, 1390 (Me.1989).

[¶ 16] Fourth, the doctrines of estoppel and/or laches may bar a shareholder derivative action when the shareholder waits too long to assert claims on behalf of the corporation. *See Norris v. Osburn,* 243 Ga. 483, 254 S.E.2d 860, 862 (1979) (derivative suit brought more than four years after challenged transaction dismissed as delayed for an unreasonable time after shareholder had knowledge of facts allegedly indicating impropriety).

[¶ 17] The history of the case and issues presented on appeal must be evaluated pursuant to these principles of law governing shareholder derivative actions.

## II. CASE HISTORY

[¶ 18] Voisine and Berube formed Valley Firewood and Tree Farm, Inc., a closely-held corporation, in October 1994 to engage in the business of packaging and distributing firewood to retail customers. The focus of the business was the creation of large quantities of small packages of

firewood for resale in supermarkets such as Stop & Shop and other retail outlets. Berube served as president of Valley and Voisine served as vice president, each holding a fifty percent interest in Valley.

[¶ 19] Voisine and Berube are brothers-in-law. In 1993, prior to the formation of Valley, Berube hired Voisine to work for Hapco, Inc. ("Hapco"), a produce distribution company whose products and sales were unrelated to the firewood sales business of Valley. Berube managed the distribution of produce for Hapco from an office in Fort Kent. Berube assigned Voisine to oversee distribution of potatoes from Hapco's Fort Fairfield location as well as distribution of watermelons from locations in Georgia and Florida.

[¶ 20] For Valley, Berube managed the solicitation and sales of firewood packages while Voisine was responsible for the processing and packaging of the wood products. By 1999, the Valley business was successful, shipping 125 to 150 truckloads of prepackaged firewood a year, principally to Stop & Shop supermarkets, but also to a few other customers. In the 1990s, Valley acquired several tractors and trailers. However, it appears that the tractors and trailers were used primarily to transport other products, as the evidence indicates that Valley rarely trucked its own firewood in its tractors and trailers.

[¶ 21] By 1999, Berube decided that he no longer wanted to work with Voisine in the firewood sales business. Berube therefore reactivated another corporation in which he was the sole shareholder, Kent Packers, for the purpose of conducting firewood sales through that corporation.[3] Berube then began billing Valley customers directly through Kent Packers and charging Valley a brokerage fee of eight percent. Voisine learned of this arrangement sometime in October or November 2000. He did not object to the arrangement of billing Valley customers through Kent Packers or charging the eight percent brokerage fee. Voisine testified that he did not object to the arrangement because he was concerned with maintaining his status as an employee of Hapco.

[¶ 22] In 2000 and 2001, Berube, with Voisine's knowledge, began the process of division, distribution, and sale of Valley's assets.

[¶ 23] First, in 2000, Valley left the trucking business. All of its tractors and trailers were sold in 2000 or 2001, with some sold to third parties, some sold to businesses owned by Berube, and some sold to a corporation created by Voisine, G & L Enterprises, Inc. (G & L). By division of property or division of tractor and trailer sales proceeds, Voisine received—or at least he does not dispute that he received—fifty percent of the value or proceeds from the division and sale of the tractors and trailers.

[¶ 24] Second, with the approval of Voisine, Valley's tangible assets, a building in Fort Kent, office equipment, supplies, and tools, were appraised and sold for the appraised value of $165,000 to Berube and his wife. Minutes of a stockholders meeting, dated April 6, 2001, and signed only by Voisine, as Clerk of Valley, indicate that "the purpose of the meeting was to authorize the sale of the corporation, including land, building and personal property for the amount of $165,000.00."

[¶ 25] The sale and equal division of the proceeds of the sale between Berube and Voisine was approved by a resolution

---

3. Berube transferred all of his Kent Packers shares to his wife in 1999 and continued to share in the profits with her.

signed by both Berube and Voisine on April 30, 2001. By its terms, the resolution, signed by both Berube and Voisine, purports to be a complete distribution and division of the assets of Valley. The resolution read as follows:

RESOLUTION OF
VALLEY FIREWOOD & TREE FARM, INC.

RESOLVED, that the undersigned officers of the Corporation are authorized to sign the necessary documents relative to the sale of the corporation.

1. Authorize the sale of the corporation, including land, building and personal property for $165,000.00.

2. Authorize Robert J. Berube and Gary J. Voisine to sign on behalf of the corporation, any and all documents necessary to complete and finalize the sale of the corporation.

Dated: April 30, 2001

/s/ Robert J. Berube—President
/s/ Gary Voisine—Vice President

[¶ 26] Despite the terms of the resolution, Voisine testified that he understood that it only applied to the sale of the building and the tangible personal property associated with the building, not the distribution of the entire assets of Valley.

[¶ 27] Third, sometime in early 2001, Berube proposed, and Voisine agreed, that the Valley firewood sales would continue to be processed and billed through Kent Packers, controlled by Berube, and a new corporation, G & L, formed by Voisine. G & L was formed on April 5, 2001, the day before Voisine signed the corporate minutes authorizing the sale of Valley.

[¶ 28] As of March 2001, Voisine and Berube anticipated that the arrangement for the 2001–2002 firewood season would be that Kent Packers would continue to sell prepackaged firewood to Stop & Shop and Valley's other customers, with Voi-

sine's corporation, G & L, supplying prepackaged firewood for half of the sales made by Kent Packers. In support of this view, Voisine testified that he planned for his new corporation, G & L, to pay Kent Packers a two percent brokerage fee and an eight percent trucking fee for each trailerload of G & L firewood sold to former Valley customers. Anticipating this arrangement, Voisine had G & L packaging labels made to use on the trailerloads of prepackaged G & L firewood that would be sold by G & L during the 2001–2002 season.

[¶ 29] Voisine testified that he and Berube had never discussed how long the 50/50 sharing of loads would continue. Voisine also testified that his corporation, G & L, would be procuring firewood from Valley's former supplier and selling it under the G & L label to former Valley customers. He further testified that he anticipated, in mid–2001, that Valley would not be selling any firewood thereafter, and Voisine agreed that, thereafter, Valley would no longer be in the firewood business.

[¶ 30] On June 30, 2001, Berube notified Voisine that he was no longer employed at Hapco. Thereafter, Voisine spoke with Berube and confirmed again that he and Berube had a deal that Voisine, through G & L, would supply firewood through Kent Packers to Valley's former customers for the 2001–2002 season.

[¶ 31] On July 31, 2001, Berube filed with the Secretary of State an application for excuse that permitted Valley to be "excused from filing annual reports with the Secretary of State, so long as the corporation in fact transacts no business." 13–A M.R.S.A. § 1301(4) (1981 & Supp. 2000). There is no evidence that, at the time, Voisine was aware of this action, nor

is there any evidence that Valley has been formally dissolved.

[¶ 32] Sometime in August 2001, when the 2001–2002 firewood shipping season would have been getting underway, Voisine telephoned Berube complaining that he had heard that Berube was shipping loads of firewood but that no loads were being sought or purchased from G & L. Voisine testified that in that phone call, Berube told him "Forget about the deal. I am keeping the customers. Go get your own." Voisine then made efforts to sell G & L firewood to two other Massachusetts supermarket chains. However, he testified that he did not approach Stop & Shop in an attempt to supply it with firewood because Stop & Shop had already made its contracts for firewood for the new season.

[¶ 33] At the trial in 2010, Voisine testified that the primary relief he was seeking was for the court to enforce the arrangement he thought he had worked out with Berube for G & L to supply half of the loads of firewood sold through Kent Packers to its customers. At the trial, Voisine confirmed his view that, as a result of the arrangements that he and Berube had made to work through Kent Packers and G & L, (1) Valley, by mid–2001, was no longer in the firewood business; (2) Valley had been sold and the proceeds of the sale were split between Berube and Voisine; and (3) Kent Packers was the entity obligated to purchase half of its firewood loads through G & L, Voisine's corporation.

[¶ 34] Following the apparent cessation of the firewood acquisition and sales arrangements between Kent Packers and G & L in the summer of 2001, very little happened regarding Valley for approximately five years. At some point during this time, Voisine filed and then abandoned, by dismissing without prejudice, an individual action against Berube for breach of fiduciary duty, and perhaps other claims

arising out of the failed relationship between Kent Packers and G & L.

[¶ 35] On June 9, 2006, acting pursuant to 13–C M.R.S. 753(1), Voisine made a demand for a special meeting of the shareholders of Valley to consider (1) Berube's "improper distribution to him by transfer of the firewood business to Kent Packers"; (2) Berube's "breach of duty of good faith by ... transferring the firewood business to Kent Packers"; (3) Berube's "distribution of the firewood business to Robert Berube's corporation[,] Kent Packers, without payments to the corporation for value of that asset"; and (4) Berube's authorization "to apply for the corporation to be excused from filing annual reports." At this meeting, Voisine moved for Valley itself to pursue claims against Berube. That motion failed.

[¶ 36] A little more than ninety days later, on September 13, 2006, Voisine filed a three-count shareholder's derivative action against Berube and Valley. Count I alleged improper distribution pursuant to former 13–A M.R.S.A. § 624 (1981). Count II alleged breach of a duty of good faith pursuant to former 13–A M.R.S.A. § 716. Count III alleged director's liability pursuant to former 13–A M.R.S.A. § 720 (1981). A similar amended complaint was later filed. The court granted Berube's motion for summary judgment on Counts I and III, leaving Count II, the claim of breach of duty of good faith, the only issue for trial. Berube filed a counterclaim for slander on which the court, after the trial, entered a judgment for Voisine.

[¶ 37] A bench trial was held on October 7, 2010. Following the trial, Berube moved for a judgment as a matter of law on the grounds that Voisine lacked standing to bring the derivative action and that Valley had no claim for lost business after

the 2000–2001 season, as Valley had ceased doing business in 2001.

[¶ 38] In its judgment on Count II, the court found that the total damages to Valley for the period July 2001 through July 2007 amounted to $1,500,000 and that each stockholder was entitled to an award of $750,000 plus interest and costs as against Berube. The court also found that Berube's transfer of a customer list[4] and of Valley's customers to Kent Packers breached Berube's duty of good faith to Valley and its shareholders. The court further found that "Valley's firewood business did continue but under the authority of Kent Packers … with the purchasing of wood, processing, and customer list that had been corporate assets of Valley." The court also found that there had been a confidential relationship between Berube and Voisine that had a chilling effect on Voisine's ability to object to Berube's actions, acquiesced in by Voisine, that had led to the sale of Valley and termination of its firewood business.

[¶ 39] Following the court's resolution of post-judgment motions, Berube brought this timely appeal.

## III. LEGAL ANALYSIS

■■ [¶ 40] As discussed in Section I addressing the law governing derivative actions, the damages recoverable in a derivative action must be those damages suffered by the corporation on whose behalf the derivative action is pursued, not by the individual pursuing the derivative action. Further, a shareholder pursuing a derivative action must have sufficient standing to pursue the action in the interest of the corporation. A shareholder who participated or acquiesced in or received benefits from the sale or distribution of the assets of a corporation lacks standing to bring a

derivative action on behalf of the corporation. *See Forbes,* 307 A.2d at 223 n. 10; *Hyams,* 113 Me. at 302, 93 A. 747.

[¶ 41] Here, Voisine knowingly and actively participated in the sale and the distribution of the assets of Valley; he signed documents purporting to authorize and accomplish the sale and distribution of assets of Valley; he accepted distribution, to him, of fifty percent of the value of the assets; and he created a corporation of his own for the purpose of providing Kent Packers with half of the firewood formerly provided by Valley to be marketed through Kent Packers. Thus, Voisine lacked standing to bring a derivative action on behalf of Valley because he had participated in the division of assets of Valley, received the benefits of that distribution, and created a corporation to sell firewood formerly sold by Valley that, he acknowledged in testimony, was intended to replace Valley, which had terminated its firewood business.

[¶ 42] Because Voisine was not presenting an individual claim for breach of fiduciary duty, and because Voisine lacked standing to bring a shareholder's derivative action on behalf of Valley, the court erred (1) in determining that Voisine had standing to bring this action; (2) in determining that Valley had been damaged by any actions of Kent Packers or Berube occurring after August 2001; and (3) by ordering that, in effect, Berube pay Voisine $750,000 plus interest and costs. Because we determine that Voisine lacked standing to bring this derivative action and was not entitled to an award of damages as a matter of law, we do not address whether the evidence was sufficient to support the damages awarded by the court.

The entry is:

---

4. The record contains no evidence that a cus-    tomer list as such ever existed.

Judgment vacated. Remanded for entry of a judgment dismissing the action with prejudice because the plaintiff shareholder lacked standing to bring the action.